SETH R. ROBINS, Respondent, *v.* ANDREW ACKERLY, Appellant.

Certain letters patent executed by the colonial government of the Colony of New York, the first of which bears date November 30, 1666, granted to the freeholders of the town of H., Long Island, a tract of land described by metes and bounds, together with all " havens, harbors, * * * fishing," etc., within the specified limits. The north boundary is " the sound running betwixt Long Island and the maine." Within the east and west bounds of the patents lies Northport harbor, a landlocked harbor ; Eaton's Neck, and Eaton's Neck beach, lying between it and the waters of the sound. *Held*, that said harbor was included in the grant, and the same having been confirmed by act of the colonial legislature (Act of May, 1691 ; 1 Bradford's Laws, 77), the title of the land under the waters of the harbor was thereby vested in the town, together with the exclusive right to oyster fishing therein.

In 1879 the town leased to plaintiff a parcel of land under water in said harbor " to be exclusively used, occupied and enjoyed " by him " in the business of planting, growing, cultivating " oysters thereon. In an action for alleged trespass in taking up and injuring the oysters planted by plaintiff upon said land it appeared that said town had claimed title and an exclusive right to the land under water in the harbor, and to the fishing privileges from time immemorial ; that it had regulated and exercised control over the fishing, and had made leases for marine railways and docks. *Held,* that the town had the right to execute the lease ; that thereby it gave the plaintiff the exclusive right for the purposes specified ; and that the action was maintainable.
*Lowndes* v. *Dickerson* (34 Barb. 586), questioned and distinguished.

(Submitted December 11, 1882 ; decided January 16, 1883.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made May 10, 1881, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury. (Reported below, 24 Hun, 499.)

This action was for an alleged trespass in entering upon, taking up and injuring oysters planted by plaintiff in Northport harbor, Long Island.

Plaintiff claimed under a lease from the town of Huntington of the land under water whereon the oysters were planted. By the terms of the lease the plot of land covered by it was " to be exclusively used, occupied and enjoyed by the party of the second part (plaintiff), and to be so used, occupied and enjoyed in the business of planting, growing, cultivating thereon and removing therefrom, of oysters (not interfering with navigation) for the term of fifteen years."

The right of the town to make the lease was claimed under three letters-patent from the colonial governors of the colony of New York. The first was granted November 30, 1666, by Governor Nicolls. This was confirmed by a patent from Governor Dongan, dated August 2, 1688, and was again confirmed by Governor Fletcher, by patent dated October 5, 1694. The description of the lands granted is similar in the different patents. In the Nicolls patent it is as follows :

" That is to say from a certaine river or creeke on the West com'only called by the Indyans by the name of Nackaquatok and by the English the Coldspring to stretch eastward to Nasaquack River, on the North to bee bounded by the Sound running betwixt Long Island and the Maine; and on ye South by ye sea including there nine several necks of Meadow Ground, all which tract of land together with the s'd necks thereunto belonging, within the bounds, limitts aforesaid, and all or any plantacon thereupon are to belong to the said Towne of Huntington as also all Havens, Harbors, Creekes, Quarryes, Woodland, Meadows, Pastures, Marshes, Lakes, Fishing, Hawking, Hunting and Fowling, and all other profitts, commodityes, Emolum'ts and Heriditam'ts to the said land and premises within limitts and bounds aforementioned, described, belonging or in any wise appertaining."

The further material facts are stated in the opinion.

*Thos. J. Ritch, Jr.*, for appellant. The main question of title to these lands under water in Northport harbor is "*res adjudicata.*" (*Lowndes* v. *Dickerson*, 34 Barb. 586.) One cannot acquire an exclusive right of property in oysters planted in a bed where oysters grow naturally. (1 Wend. 237; *Osgood's Case*, 6 City H. Rec. 4; 14 Wend. 42; N. Y. Statute, 1866, chap. 753; 4 Barb. 592; 11 id. 298; 34 id. 586; 8 N. Y. 475.) The grant of the "haven or harbor," assuming the same to be valid, may have carried with it the soil and still left the fishery subject to the public right. (2 Blackst. Comm. 40; *Brink* v. *Richmyer*, 14 Johns. 265.) The general form and configuration of the coast line indicate the reason and the propriety of a different rule applying to the case of the South Bay and Northport harbor, even if the granting clauses of the respective patents were the same. (60 N. Y. 57.)

*N. S. Ackerly and Thos. Young* for respondent. The town of Huntington owns these lands and through their trustees (in whom is the legal title) can grant an exclusive use thereof. (Nicoll Patent, dated 1666, pp. 5–7; Dongan Patent, dated

1688, pp. 7–17; Fletcher Patent, dated 1694, pp. 17–27; *The Trustees of Brookhaven* v. *Strong*, 60 N. Y. 56; *People* v. *Van Rensselaer*, 9 id. 291, 346, 347, 348; *McCready* v. *State of Virginia*, 4 Otto, 391; First Constitution of State of New York, § 36.) The words "All harbors, havens, waters," used in the grants specifically identify the premises. (*Rogers* v. *Jones*, 1 Wend. 237; *People* v. *Vanderbilt*, 26 N. Y. 293.) The legal title to these premises is in the trustees of the town; they hold in trust for the benefit of the people of the town. (*Denton* v. *Jackson*, 2 Johns. Ch. 320; *Jackson* v. *Louw*, 12 Johns. 252; *Foster* v. *Rhoads*, 19 id. 191; *Jackson* v. *Lawton*, 10 id. 23.) Prescription supposes and must be based on a supposed grant; in the case of a user by the public there is no grantee and no prescriptive right can be obtained. (*Munson* v. *Hungerford*, 16 Barb. 265; *Curtis* v. *Keesbi*, 14 id. 511; *Clements* v. *Village of West Troy*, 10 How. 199; *Post* v. *Pearsall*, 22 Wend. 425, 440; *Pearsall* v. *Post et al.*, 20 id. 121–125; *Bland* v. *Lipscombe*, 30 Eng. L. and Eq. 189, note.) The right to take and carry away fish such as is claimed here is in the nature of a profit, and is what was called in the early books "*profit a prendre*." (2 Washburn on Real Property [3d ed.], 276, subd. 3; Washburn on Easements [3d ed.], 126, § 21; id. [3d ed.], 6 and 7, § 6.) A right of "*profit a prendre*" cannot be gained by custom. (Washburn on Easements [3d ed.], 125, § 20.) It must be gained, if at all (when not claimed by grant), by prescription. (Washburn on Easements [3d ed.], 15, § 14; id. 125, § 20.) A town meeting has power to direct use of corporate property, etc. (1 R. S. [5th ed.], 87, § 9, subd. 5, 9, 11.)

MILLER, J. This action involves the right of the plaintiff to the use of land under water in Northport harbor, in the town of Huntington, Suffolk county, for the purposes of an oyster bed. The plaintiff's title is derived from a lease executed and delivered to him upon the 1st day of January, 1879, from the trustees of the town of Huntington, and the most important question involved is in regard to the legal

title of said trustees to the land in question and their right to grant the same for the purposes named in the lease.

The title of the town of Huntington is derived from several patents issued at different times by the colonial governors of the colony of New York, the first of which bears date on the 30th day of November, 1666, and the last upon the 5th day of October, 1694.

Upon the trial no question was made as to the eastern and western boundaries of the patents, and there was testimony establishing the other boundaries, and that the town had claimed title to the land covered by water in the harbor and the fishing privileges and from time immemorial treated the same as the property of, and as belonging to the town, and also claimed an exclusive right to the same. The evidence shows that it regulated and exercised control over the fishing and shooting in the waters of the harbor, had passed resolutions to prevent strangers, who were not inhabitants, from fishing therein, and had made leases for marine railways and docks, and had executed the present lease for the use of the land under water, therein described, for oyster fishing.

The judge upon the trial found that the title of the lands covered by water in Northport harbor, with the shell-fish growing thereon, was in the trustees of said town under ancient patents, and the testimony sufficiently sustains such finding.

The question arising as to the rights acquired and the effect to be given to grants of the character of those herein referred to were the subjects of consideration, and substantially passed upon by this court in the case of *The Trustees of Brookhaven* v. *Strong* (60 N. Y. 56), and it was there decided that by the common law the king had the right to grant the soil under water and with it the exclusive right of fishery, and that a grant by the colonial government confirmed by subsequent legislation conveyed an exclusive right to the oyster fishery.

The patents under which the claim was made in the case cited were issued about the same time and were of a similar import as those relied upon in the case at bar. A part of the

same South bay granted by the Brookhaven patents is also covered by the patents introduced in evidence upon the trial of this action.

The learned counsel for the defendant claims that a distinction exists between the two cases; that the *locus in quo* is different; that the charters and the surroundings were not the same, and that a continuous possession and use by the town, in the Brookhaven case, was relied upon to supply defects. It is true that the patents embraced different territories and the charters of the towns are not perhaps precisely the same in all respects, but a continuous possession and use of the land under water was an important part of the proof in the case at bar and greatly relied upon. Nor is there any serious question that the town exercised a control over the fisheries for a number of years so as to ripen into and strengthen its right thereto. Although the town did not lease any of the oyster beds until 1879, it did execute leases of other portions of the land covered by water and thus indicated its right to execute leases. It certainly as owner and as being in possession had a right to lease which is sufficient to uphold its claim to the land. The evidence that persons caught oysters there without paying for the privilege does not necessarily show that the town had no right to the oyster-fisheries and only furnishes some evidence which was to be weighed and considered by the court in determining the rights of the parties. The leases made show a more absolute title to the lands under water than a lease for fishing purposes, and in connection with the proceedings of town meetings and of grants for railroad purposes show that a claim has always been made of title, as well as to the right of fishery.

The fact that the trustees have allowed the lands to be enjoyed in common does not destroy their claim of title. Although the court say in the Brookhaven case that the elements of title derived from the patents were very much strengthened by possession and user, it disposes of the question of title mainly upon the authority of the patents themselves.

The counsel for the appellant claims that there is no recognition by the legislature of the title of the town of Huntington

to the land under water of Northport bay or harbor. We think that the act of 1691, passed for the purpose of quieting and confirming titles, confirmed all royalties and other franchises which had been previously granted, and among these were those included in the charter of the town of Huntington. This is expressly held in the case of *Brookhaven* v. *Strong* (*supra*), and also in the case of *The People* v. *Van Rensselaer* (9 N. Y. 291). If the land in question is covered by the charters to which reference has been had, the cases cited dispose of the question at issue. We think it is established by sufficient evidence that the boundaries of the patents included the oyster bed which is the subject of this controversy. As already stated there is no question as to the western and eastern boundaries. The northern boundary of the town is the sound. This includes, we think, Northport harbor where the oyster beds in question are located. The language of the grant includes " all havens, harbors, creeks " as well as " fishing, hawking, hunting and fowling." In the Brookhaven case the south boundary, was the ocean, and there was a sandy flat or beach between the ocean and the bay, and the question was raised that the South bay was not within the grant. This court held that this objection could not be sustained and that the southern boundary which was the ocean, included the beach and of course the bay, etc. The patent under which the plaintiff claims is bounded on the north by the sound, adjacent to the sound is Eaton's neck and Eaton's neck beach, and south of this is Northport harbor. By analogy both Eaton's neck and Eaton's neck beach are within the patents and necessarily the harbor also. The boundary by the sound includes all the land south of the sound. That this was intended is indicated by the use of the words in the grant, " harbor, havens," etc. That Northport harbor was included within the limits of the boundaries was proved by the undisputed evidence of the surveyor and others. It was also proved that Eaton's neck beach was leased by the town. It should also be noticed that Northport harbor is land-locked and has always been used and distinguished as a harbor. It is very evident that there was testimony showing

that Northport harbor was within the limits of the grant of the patents and, as a question of fact, which was determined by the findings of the court upon the trial and sustained by the General Term upon appeal, the subject is not now open for review.

The case of *Lowndes* v. *Dickerson* (34 Barb. 586) is relied upon by the counsel for the appellant. It was there held that the harbor of Northport was not within the limits of the town of Huntington, and the inhabitants thereof had not the exclusive right to take fish therein; that the right of fishing is a common right inherent in the people by the common law, and that nothing passed by the grant of the colonial government to the town by implication. It was there stated in the opinion that the weight of authority was adverse to the existence of any power in the British crown to grant to an individual the right to take fish in the sea and in an arm thereof in exclusion of the common liberty. Since that case was decided this court has held, as we have seen in the Brookhaven case, that the crown had authority to grant the town, as such, a right of fishery within its borders, thus overthrowing the doctrine enunciated in the case of *Lowndes* v. *Dickerson* (*supra*), and this case has been also overruled by the decision of the same General Term in the case at bar. The claim, therefore, that that case is conclusive as to this, and that the question is *res adjudicata* is, we think, not well founded. The defendant there claimed the right to take oysters as a citizen of the town of Huntington. Neither party had any title or lease from the town, and it may be assumed that in that case the proof did not entirely establish that the bay and harbor in question were within the limits of the town of Huntington, as is the fact here, and as the court found, and that proof was not produced to establish, as is the case here, that from time immemorial the trustees of Huntington treated the harbor in question and the land covered by water therein as under the control and belonging to the town, regulated the fishing and shooting, prescribed penalties for any infringement upon the right of fishery, made leases and performed other acts of ownership which evinced that they

held title to the same. Nor does it appear that there was any proof in that case that Northport harbor was a land-locked harbor; that Eaton's neck and Eaton's Neck beach lay north thereof, and that the sound was north of this; in fact there was no proof that Northport harbor was actually south of the north boundary of the patent. These defects and deficiencies show that the case cited was different in these material and important features from the case now considered. They have been supplied by proof upon the trial in this case. The doctrine laid down in the Brookhaven case brings Northport harbor directly within the boundaries of the town of Huntington as established by the grants made to them, and the lease executed by the town was legal and valid. (See, also, *Rogers* v. *Jones*, 1 Wend. 237.)

We have examined the other questions raised by the counsel for the appellant and in none of them do we find any reason which would lead us to a conclusion different from that which has already been expressed, or to the reversal of the judgment, which was clearly right and should be affirmed.

All concur, except RAPALLO, J., absent.

Judgment affirmed.