LOUIS C. TIFFANY, Respondent, *v.* TOWN OF OYSTER BAY et al., Appellants.

Title — lands under water of Cold Spring Harbor granted to town of Oyster Bay by Andros patent — state had no title thereto and attempted grant is invalid — evidence — documents treated as the equivalent of evidence by Appellate Division may be considered by Court of Appeals, but this court is not bound to adopt the same view as to their meaning and effect.

1. In the ancient colonial charters granting land on Long Island in which the sound is named as the boundary on the north, the term refers directly to the body of water known by such name, and does not include waters opening into it or connected with it.

2. In the absence of language clearly indicating a different intent, grants of land bounded by the sea or a navigable river where the tide ebbs and flows carry the title only to high-water mark.

3. The Huntington patent, which antedated the Andros patent to the town of Oyster Bay, conveyed no part of the land under water in Cold Spring Harbor, the western limit of its grant being high-water mark along the eastern shore.

4. Upon examination of the Andros patent to the town of Oyster Bay, and construing the said patent in connection with prior patents known as the Huntington and Horse Neck patents, *held*, that the whole of the land under water in Cold Spring Harbor was granted to the town of Oyster Bay by the Andros patent, and that, therefore, the state had no title thereto, and its attempted grant thereof is invalid.

1

5. Whatever documents are treated as the equivalent of evidence by the Appellate Division may be so treated in this court; but the Court of Appeals is not bound to adopt the same view as to their meaning and effect. Where documents were brought to the attention of the Appellate Division on behalf of a respondent therein for the purpose of sustaining the judgment below, they may be considered in this court as grounds for reversing the judgment.

*Tiffany* v. *Town of Oyster Bay*, 141 App. Div. 720, reversed.

(Argued February 14, 1913; decided June 3, 1913.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered January 12, 1911, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Henry A. Uterhart, John J. Graham* and *George B. Stoddart* for appellants. The Andros patent of September 29, 1677, conveyed to the town of Oyster Bay title in fee simple to the lands under the waters of Cold Spring Harbor and Oyster Bay. (*Robins* v. *Ackerly*, 91 N. Y. 98; *Lowndes* v. *Huntington*, 153 U. S. 1; *Town of North Hempstead* v. *Eldridge*, 111 App. Div. 789; *Roe* v. *Strong*, 107 N. Y. 350.) The reasoning in the prevailing opinion of the Appellate Division is based upon incorrect premises, and the conclusions are, therefore, unsound. (*People ex rel. Howell* v. *Jessup*, 160 N. Y. 249; *De Lancey* v. *Piepgras*, 138 N. Y. 38; *Town of Southampton* v. *M. B. Oyster Co.*, 116 N. Y. 1.) The Andros patent to the town of Oyster Bay conveyed to the town title to the lands under the waters of Cold Spring Harbor and Oyster Bay. (*Gould* v. *James*, 6 Cow. 369; *Nostrand* v. *Durland*, 21 Barb. 478; *Furman* v. *City of New York*, 5 Sandf. 16; *People* v. *Vanderbilt*, 26 N. Y. 293; *Trustees of Brookhaven* v. *Strong*, 60 N. Y. 72;

*People* v. *N. Y. & S. I. F. Co.,* 68 N. Y. 78; *Robins* v. *Ackerly,* 91 N. Y. 105; *Smith* v. *City of Rochester,* 92 N. Y. 480; *Mayor* v. *Hart,* 95 N. Y. 451; *Roe* v. *Strong,* 107 N. Y. 358; *Southampton* v. *Mecox Co.,* 116 N. Y. 6; *De Lancey* v. *Piepgras,* 138 N. Y. 36; *City of Geneva* v. *Henson,* 195 N. Y. 458.) The historic facts and documents referred to by the appellants are proper matters for judicial notice. (*People* v. *Snyder,* 41 N. Y. 397; *Howard* v. *Moot,* 64 N. Y. 262; *Matter of Viemeister,* 179 N. Y. 235.)

*Willard N. Baylis* for respondent. This court cannot, for the purpose of reversing the judgment at the Special Term herein, consider any facts that were not before that court, nor read any record evidence not in the return. (*Hunter* v. *R. R. Co.,* 116 N. Y. 615; *Nat. Harrow Co.* v. *Bement & Sons,* 163 N. Y. 505; *Day* v. *Town of New Lots,* 107 N. Y. 148; *A. A. R. R. Co.* v *Johnson,* 134 N. Y. 375; *Dunham* v. *Townshend,* 118 N. Y. 281; *People ex rel. Warschauer* v. *Dalton,* 159 N. Y. 235; *Stemmler* v. *Mayor,* 179 N. Y. 473.) The body of water between the uplands of the town of Huntington and Lloyd's Neck on the east and the uplands of Oyster Bay on the west was not conveyed to the town of Oyster Bay by the Andros patent, dated September 29, 1677, but title thereto remained in the crown and became vested in the state of New York at its inception, and the grant made by the state to Mr. Tiffany conveyed to him for beneficial enjoyment the premises in question. (*Underhill* v. *Saxton,* 15 App. Div. 270; *Town of North Hempstead* v. *Eldridge,* 111 App. Div. 789; *De Lancey* v. *Piepgras,* 138 N. Y. 26; *Stillman* v. *Burfeind,* 21 App. Div. 13; *Sage* v. *Mayor, etc.,* 154 N. Y. 61; *Matter of Mayor, etc.,* 182 N. Y. 361; *People* v. *Page,* 39 App. Div. 110; *Mohawk Bridge Co.* v. *Utica, etc., R. R. Co.,* 6 Paige, 554; *People* v. *N. Y. & S. I. Ferry Co.,* 68 N. Y. 71; *Mayor* v. *Broadway, etc., R. R. Co.,* 97 N. Y. 275.)

WILLARD BARTLETT, J.   This case is another controversy in the long series of litigations involving the true meaning and proper construction of ancient colonial charters relating to lands under water on Long Island; and it presents questions of considerable difficulty which have led to a very decided difference of opinion in the court below.   The rights of the parties depend upon the title to the lands under water in the bay known as Cold Spring Harbor.   The trial judge and a majority of the Appellate Division have held that this title, prior to the grant to the plaintiff, was vested in the state; while two of the Appellate Division justices are of opinion that it was granted to the town of Oyster Bay by the Andros patent of September 29, 1677, and hence that the state never acquired any interest in the land under water which it assumed to convey to the plaintiff, the right to the possession of which he has thus far successfully asserted in this action.

The plaintiff is the owner of about 400 acres of upland at Cove Neck, extending about 3,670 feet along the westerly shore of Cold Spring Harbor.   On March 30, 1905, the state of New York executed and delivered to him a grant of the lands under water in front of this upland, for the purpose of erecting on the lands thus granted boathouses and other structures specified in the letters patent, which letters provided that the grant should become null and void unless the improvements were completed within five years.   Prior to August 1, 1906, the plaintiff had erected a boathouse and other structures between high and low-water mark in front of his uplands; when the officers and agents of the town of Oyster Bay partly demolished the same, acting under the direction of the town, and notified the plaintiff that he must not attempt to restore or maintain them, claiming to justify their action on the ground of the town's ownership of all the lands under water in Cold Spring Harbor by virtue of the title acquired under the Andros patent of 1677,

which will be more fully considered hereafter. This suit was thereupon instituted to enjoin and restrain the town, its officers and agents, from entering upon the lands under water embraced in the letters patent from the state to the plaintiff or interfering in any manner with his possession of the same. The trial judge decided that neither the town of Oyster Bay nor its predecessors acquired any title to the lands under water in Cold Spring Harbor below high-water mark, by virtue of the Andros patent or otherwise; that by virtue of the letters patent from the state already mentioned the plaintiff became and was the lawful owner of a beneficial enjoyment in the lands under water in front of his upland as in terms thereby conveyed, and that the plaintiff was, therefore, entitled to the permanent injunction for which he prayed. Judgment was entered accordingly, and the present appeal is from the determination of the Appellate Division affirming that judgment.

The Andros patent, upon the interpretation of which the determination of this appeal depends, was executed on September 29, 1677, by Sir Edmund Andros, then governor-general of New York under James, Duke of York, to Henry Townsend, Sr., and six other persons named therein, as patentees for and on behalf of themselves and their associates, the freeholders and inhabitants of the town, which is characterized at the beginning of the patent as "a certaine Towne in the North Riding of Yorkshire upon Long Island, commonly called & knowne by the name of Oyster Bay, Scituate, lying and being on the North side of the said Island towards the Sound, having a certain tract of land thereunto belonging." The property conveyed to the patentees is thus described:

"The East bounds whereof begin att the head of the COLD SPRING and so to range upon the Southward line from the SOUND or NORTH SEA to the SOUTH SEA cross the Island to the South East bounds of their South Meadows

at a certaine River called by the Indyans WARRASKETUCK, then running along the Sea Cost Westerly to another certaine River called ARRASQUANG; then Northarly to the Eastermost extent of the Great Playnes where the line divides Hempstead and Robert Williams bounds from thence stretching Westerly along the middle of the said Playnes till it bears South from the said Robert Williams markt tree at the Point of Trees called CANTIAGGE, thence on a North line to the said Markt Tree, and then on a North North West line Somewhat Westerly to the head of Hempstead Harbour, on ye East side so to the Sound, and from thence Easterly Along the Sound to the aforemenconed North and South Line which runs cross the Island by the COLD SPRING aforesaid, Bounded on the North by the Sound, on the East by Huntington Limmitts on the South part by the Sea and part by Hempstead Limmitts, and on the west by the Bounds of Hempstead aforesaid; including all the Necks of Land and Islands within the aforesd described Bounds and Limmitts."

The difference between the parties relates chiefly to a part of the eastern boundary of the tract thus granted, namely, that portion between the head of Cold Spring Harbor, or *the* Cold Spring proper at the south end of the harbor and the sound. The plaintiff contends and has satisfied the court below, that this part of the eastern boundary runs along the west shore of Cold Spring Harbor, thus excluding the harbor from the grant, while the defendants insist that if the Andros patent be construed as it should be with the prior patents of Huntington and Horse (now Lloyd's) Neck, the eastern boundary is coincident with the eastern shore of Cold Spring Harbor, thus including the whole of that harbor in the grant to Oyster Bay.

The phrase " Huntington Limmitts " is a most important element in determining the location of the eastern boundary of the tract granted by the Andros patent. The draftsman of the patent manifestly contemplated a straight

line passing through the head of Cold Spring Harbor
and extending southward coincident with the western
boundary of Huntington, through the middle of the island
to the South Sea, and directly northward to the sound,
except in so far as prior grants to Huntington and
Horse Neck might prevent the continuance of a straight
line in that direction. The first description in the patent
ends not at the head of Cold Spring Harbor where it
begins, but at a point *on the Sound* where the northern
boundary, prolonged eastward, strikes the aforementioned
north and south line which runs across the island *by* the
Cold Spring aforesaid. It is only by this construction
that effect can be given to the description of the north
boundary in the Andros patent which runs from the point
where the east side of Hempstead Harbor reaches the
sound; "Thence Easterly Along the Sound to the afore-
menconed North and South line which runs cross the
Island by the Cold Spring aforesaid." The plaintiff's con-
struction makes this north boundary run not along the
sound, but along the western shore of Cold Spring Har-
bor, which is not a part of the sound and not easterly,
but south by east along such western shore. This is too
great a departure from the language of the patent to be
sanctioned. Cold Spring Harbor is not to be deemed a
part of the sound within the meaning of the patent
unless the term here is to be interpreted differently from
the meaning given to it in other similar grants. In the
ancient colonial charters granting land on Long Island
in which the sound is named as the boundary on the
north, the term refers directly to the body of water
known by such name and does not include waters open-
ing into it or connected with it. (*Lowndes* v. *Huntington*,
153 U. S. 1, 22, 27.) "The northern boundaries in all
these charters is given as 'the Sound.' That was then,
and is now, a well known body of water. It opens into
the Atlantic Ocean, but is separate and distinct therefrom.
Into it flow many rivers, and open many bays, harbors,

and inlets; but the fact of a connection between them and it does not make them a part of the Sound."

It is to be observed that the Andros patent contains altogether three statements with reference to the eastern boundary of the town of Oyster Bay.

The first is as follows: " The East bounds whereof begin at the head of the Cold Spring and so to range upon the Southward line from the Sound or North Sea to the South Sea cross the Island to the South East bounds of their South Meadows at a certaine River called by the Indyans Warrasketuck."

The second statement describes the end of the boundary from the east side of Hempstead Harbor at the sound as running " from thence Easterly along the Sound to the aforemenconed North and South Line which runs cross the Island by the Cold Spring aforesaid."

And finally we have in the third place a general description of the entire tract conveyed as " Bounded on the North by the Sound, on the East by Huntington Limmitts, on the South Part by the Sea and part by Hempstead Limmitts and on the West by the Bounds of Hempstead aforesaid; including all the Necks of Land and Islands within the aforesd decribed Bounds and Limmitts."

As is aptly suggested in the brief of respondent's counsel,· it seems essential in construing the grant to Oyster Bay that the court have in mind the language used in creating the municipalities which abut on the body of water in question; and · he calls our attention in the first place to the Nicolls patent to Huntington in 1666, which conveys " From a certaine river or creeke on the West com'only called by the Indyans by the name of Nacka-quatck and by the English the Cold Spring, to stretch eastward to Nasaquack River; on the North to bee bounded by the Sound running betwixt Long Island and the Maine; and on ye South by ye sea, including there nine several necks of Meadow Ground, all which tract

1913.]          Opinion, per WILLARD BARTLETT, J.          [209 N. Y.]

of land together with the s'd necks thereunto belonging, within the bounds, limitts aforesaid, and all or any plantacon thereupon are to belong to the said Towns of Huntington, as also all Havens, Harbors, Creekes, Quarrys, Woodland, Meadows, Pastures, Marshes, Lakes, Fishing, Hawking, Hunting and Fowling and all other profitts, commodetyes, Emolum'ts and Hereditam'ts to the said land and premises within limits and bounds aforementioned, described, belonging."

Here we have a certain river or creek, called by the English the Cold Spring, given as the western boundary of Huntington. Clearly this creek formed part of the "Huntington Limmitts" mentioned in the Andros patent to Oyster Bay eleven years later. The Huntington patent, however, conveyed no part of such creek to the town of Huntington beyond high-water mark. In the absence of language clearly indicating a different intent, grants of land bounded by the sea or a navigable river where the tide ebbs and flows carry the title only to high-water mark. (*Sage* v. *Mayor, etc., of N. Y.*, 154 N. Y. 61; *Matter of Mayor, etc., of New York*, 182 N. Y. 361.) So that Huntington acquired no part of the land under water in Cold Spring Harbor by virtue of its patent prior to the Andros patent to Oyster Bay unless it can be held that title thereto was conveyed under the clause which embraces in the grant "also all Havens, Harbor, Creekes," etc. This clause, however, is qualified by the requirement that such havens, harbors and creeks must be "within limits and bounds aforementioned;" and, inasmuch as the western limit was high-water mark along the eastern shore of Cold Spring Harbor, the harbor itself cannot be deemed to be "within the limits and bounds aforementioned," but on the contrary is clearly outside of them.

The next grant, antecedent to the Oyster Bay patent, to which counsel for the respondent calls our attention as proper to be considered in construing the latter grant, is the patent to Horse (now Lloyd's) Neck made by Governor

Nicolls to Nathaniel Sylvester and others on November 20, 1667. The tract thereby conveyed is described as follows:

" A certain parcell or tract of Land in the North Riding of Yorkshire on Long Island & being in a Neck on the North side thereof stretching out into the Sound or East River commonly called by the name of Horse Neck, bounded on the West with Oysterbay on the east with Cow Harbor toward the North with the Sound and toward the South with a Beach extending to the head of a certain Creek which parteth or dividith the bounds of the Town of Huntington & the said Neck."

The part of this description material to the present controversy is the clause "bounded on the West with Oyster Bay." Oyster Bay was and is a navigable arm of the sea, and, as in the case of Cold Spring Harbor, a grant bounded thereon is subject to the rule of the common law that it extends only to high-water mark.

Notwithstanding his own suggestion that a consideration of these patents is essential to a proper understanding of the case, the learned counsel for the respondent in another part of his brief objects to their consideration now on the ground that they were not introduced in evidence upon the trial. It appears, however, that they were brought to the attention of the Appellate Division in behalf of the respondent, when the case was before that court, for the purpose of sustaining the judgment. Nevertheless, it is argued that records which were not put in evidence at the trial can be considered by an appellate court only for the purpose of upholding a judgment but never for the purpose of reversing it. Assuming that this rule may have been applicable in the Appellate Division it cannot be deemed controlling here under the circumstances. The court of intermediate appeal, at the instance of the respondent, has considered these records and must be deemed to have based its decision upon them in addition to the evidence regularly in

the case.   It would be manifestly unfair for the court of last resort to refuse to take cognizance of such records thus voluntarily brought into the case to help the respondent, simply because it deemed their effect favorable to the appellants.   Whatever documents were treated as the equivalent of evidence by the Appellate Division may be so treated in this court; but the Court of Appeals is not bound to adopt the same view as to their meaning and effect.

In the light of the Huntington and Horse Neck patents, then, what was the eastern boundary of the tract conveyed by the Andros patent of 1677 to the town of Oyster Bay?   Obviously it would have been the range line running by "the head of the Cold Spring" from the South Sea to the sound were it not that the Huntington and Horse Neck patents, prior in date, had granted to other patentees lands bounded on Cold Spring Harbor and the bay of. Oyster Bay, and extending westward of the range line protracted from the head of Cold Spring Harbor to the sound.   The reference to Huntington Limmitts in the general description in the Andros patent, and the fact of the prior patent to Horse Neck making its western boundary Oyster Bay, show that the range line thus prolonged was not to control so far as it would cut off and give to the grantees under the Andros patent any lands which had previously been granted to others. If carried straight from the head of Cold Spring Harbor to the sound it would apparently lie so far east as to cut off territory already granted to the patentees of Huntington and Horse Neck, which could not have been intended.

The result of this discussion is the conclusion that the whole of the land under water in Cold Spring Harbor and the bay known as Oyster Bay was granted to the town of Oyster Bay by the Andros patent of 1677.   It follows that the state had no title to the property which it assumed to grant to Mr. Tiffany as owner of the adjacent upland,

and that the dissenting justices in the Appellate Division were right in holding that upon the case as presented in that court the defendants should have prevailed in the action.

It is a matter of historical interest that the claim of the town of Oyster Bay to the lands under water to which it now asserts title is not a new idea. The case of *Rogers* v. *Jones* (1 Wendell, 237), decided by the old Supreme Court in 1828, was a suit for a penalty under a by-law of the town which declared that "no person not being an inhabitant of Oyster Bay shall be allowed to rake or take any oysters in the creeks or harbors of the Town of Oyster Bay under the penalty of $12.50 for each offence." The defendant took and carried away 100 oysters from waters within 100 yards of the beach on Lloyd's Neck, and the case was decided upon the assumption that this part of the bay belonged to the town.

The judgment should be reversed and a new trial granted, with costs to abide the final award of costs.

CULLEN, Ch. J., CHASE, CUDDEBACK, HOGAN and MILLER, JJ., concur; GRAY, J., dissents, on opinion of BURR, J., below.

Judgment reversed, etc.