ELIZABETH MAYO et al., Respondents, *v.* THE NEW YORK CENTRAL RAILROAD COMPANY, Appellant, Impleaded with Others. (Action No. 1.)

ELIZABETH MAYO et al., Respondents, *v.* THE NEW YORK CENTRAL RAILROAD COMPANY, Appellant. (Action No. 2.)

(Argued October 11, 1933; decided January 9, 1934.)

*Kenneth O. Mott-Smith, Frederick L. Wheeler, Clarence B. Plantz* and *Clive C. Handy* for appellant. Plaintiffs have failed to prove that they are successors, in title, to Van Cortlandt. (*Beers* v. *Hotchkiss*, 256 N. Y. 41; *Lamb* v. *Union Ry. Co.*, 195 N. Y. 260; *O'Gara* v. *Eisenlohr*, 38 N. Y. 296; *Ruppert* v. *Brooklyn Heights R. R. Co.*, 154 N. Y. 90.) Plaintiffs are estopped to deny appellant's title to parcels Nos. 1, 2 and 3 in action. No. 2. (*McNichol* v. *Flynn*, 167 App. Div. 646; *Jackson* v. *Wilson*, 9 Johns. 91; *Ludlow* v. *H. R. R. R. Co.*, 4 Hun, 239; *Tobey* v. *Taunton*, 119 Mass. 404; *DeWitt* v. *Van Schoyk*, 35 Hun, 103; 110 N. Y. 7; *Trustees of Town of Brookhaven* v. *Smith*, 118 N. Y. 634.)

*Talbot M. Malcolm* and *Henry W. Eaton* for respondents. Plaintiffs are successors in title to Van Cortlandt. (*Starke-Belknap* v. *N. Y. C. R. R. Co.*, 197 App. Div. 249; 234 N. Y. 630; *People* v. *Starke-Belknap*, 218 App. Div. 849; 247 N. Y. 457; *Beers* v. *Hotchkiss*, 256 N. Y. 41.) The lands involved were included in the Van Cortlandt grant. (*Starke-Belknap* v. *N. Y. C. R. R. Co.*, 197 App. Div. 249; 234 N. Y. 630.) Plaintiffs are not estopped from claiming title to parcels Nos. 1, 2 and 3 in action No. 2. (*People* v. *Starke-Belknap*, 218 App. Div. 849.)

KELLOGG, J. These two actions involve the title to lands under water on the easterly side of the Hudson river, at a point approximately one mile north of the village ·of Croton-on-Hudson. The plaintiffs claim title to the two parcels involved in the first action and the four parcels involved in the second, as the successors in interest of Stéphanus Van Cortlandt, to whom, in the year 1697, there ·was patented by the Crown a large tract of land on the east side of the Hudson river, between the Croton river on the south and Anthony's Nose on the north, extending through to the Connecticut line on the east. The appellant, New York Central, claims title to lot No. 2 in action No. 1, through a grant of land under

water, made by the State of New York in the year 1915, to the defendants Sherwoods, which the Sherwoods subsequently deeded to the appellant. Parcel No. 1 in action No. 1 is not now involved, since the appellant never claimed title thereto, and the claimants, Sherwoods, have not appealed from the judgment decreeing that the plaintiffs own title. The appellant, New York Central, also claims title to the four lots in action No. 2, its claim being based upon a grant made to it in December, 1873, by the State of New York. Obviously, if the Crown, in the year 1697, conveyed to Stephanus Van Cortlandt the lands under water now in question, the State of New York possessed no title thereto which it could effectively convey to the appellant in the year 1873, or to the Sherwoods in 1915.

The Van Cortlandt patent, in describing the westerly boundary of the land granted, gives the point of beginning as Knightawanck creek (now Croton river), and then reads as follows: " Runing along the said Hudsons River Northerly as the said River runs into the North side of a high Hill in the high Lands Commonly Called and Knowen by the Name of Anthonys Nose to a Red Ceadar Tree * * * Including in the Said Northerly Line all the Meadows, Marshes, Coves, Bays and Necks of Land and pennensulaes that are adjoining or Extending into Hudsons River within the bounds of the Said Line * * *."

In *Sage* v. *Mayor* (154 N. Y. 61) the court considered a grant of land, described as " bounded on the east by the Harlem River." The grant by its terms included all " meadows, pastures and marshes " which were " within the said bounds and limits set forth." The court held that the phrase last quoted so limited the phrase first quoted that no marshes below high-water mark were granted, saying: " When lands are described in a deed as bounded by a navigable river where the tide ebbs and flows, the title ends at high water mark, as the law stood

at the date of the Nichols charter and as it stands today."
The appellant seeks to apply this doctrine to the present
case, asserting that as the Hudson river constituted the
west boundary line of the lands patented, which meant
the river at high-water mark, the " coves and bays "
granted must be " within the bounds of the said Line," or
above such high-water mark. Obviously, there could be
no coves or bays along the westerly line of the grant, at
higher levels than the maximum flow of the Hudson river.
Self-evidently, if the words " coves " and " bays " con-
tained in the grant, were to be given any effect, the strict
doctrine of *Sage* v. *Mayor* could not be applied, and the
words " along the said Hudsons River " could not be
interpreted to mean along the high-water mark of that
river as it winds and turns. And so it was held in *Starke-
Belknap* v. *N. Y. Central R. R. Co.* (197 App. Div. 249;
234 N. Y. 630).

In the case cited the parcels involved were lands under
water in front of uplands covered by the Van Cortlandt
Patent, slightly to the north of the parcels here involved.
It was stipulated between the parties that the lands were
under the water of coves and bays, constituting
indentations in the Hudson river. The court held that
the lands were covered by the Van Cortlandt patent.
Citing the words to which we have referred and others,
it stated: " These terms taken together aptly express a
boundary along the necks or points of land so as to include
bays and coves as part of this manor." In so doing it
applied the doctrine of the Long Island cases cited by it,
viz., *Robins* v. *Ackerly* (91 N. Y. 98); *Tiffany* v. *Town
of Oyster Bay* (209 N. Y. 1, 7); *Grace* v. *Town of North
Hempstead* (166 App. Div. 844; affd., 220 N. Y. 628).
That doctrine is expressed in *Tiffany* v. *Town of Oyster
Bay (supra)* as follows: " In the ancient colonial charters
granting land on Long Island in which the sound is
named as the boundary on the north, the term refers
directly to the body of water known by such name and

does not include waters opening into it or connected with it." The implication arising from the *Starke-Belknap* case, if not its express holding, is that, for the purpose of interpreting the Van Cortlandt grant, the Hudson river, as employed to determine the western boundary, must be regarded as the main body of the river, excluding indentations made by coves and bays.

The maps which have been placed in evidence clearly indicate that the four parcels involved in the second action lie beneath the waters of small coves or bays, indenting the easterly shore of the Hudson river, within lines drawn from nearby headlands to nearby headlands. It must be held that these lands were included in the Van Cortlandt grant. The same is not entirely true of parcel No. 2, involved in action No. 1. The court has found as a fact that these lands are " shown on Defendant's Exhibit Q. in blue shading cross hatched in black with the number 2 in a square." An examination of that exhibit indicates that while a portion of such lands lie within a small cove or bay, a line drawn from headland to headland would exclude other portions from the cove or bay, to the extent of approximately one-half of the parcel. However, these excluded portions would be comprehended by the grant, provided the bend of the river to the east, between Croton Point on the south and Verplanck Point on the north, may properly be termed a " cove " or " bay " within the meaning of the patent. The United States Coast and Geodetic Survey, an exhibit in the case, indicates that the distance between these two points is six and one-half miles; that the extreme bend of the river to the east between these points is one and one-half miles. May it be said that, within the meaning of the Long Island rule as applied to the Hudson river as it passes the Van Cortlandt grant, that river, properly regarded, between the two points six and one-half miles apart, does not touch the westerly shore of the Van Cortlandt property? That all the waters, lying easterly

of a straight line drawn between the two points, constitute a " bay " or " cove " opening into the Hudson?

In *Robins* v. *Ackerly* (*supra*) the subject of the action was the title to lands under water in Northport bay, Long Island. Northport bay is almost entirely land locked, the headlands at its mouth being less than one-third of a mile apart, while the depth of the bay is more than three miles. It empties, not into Long Island sound, but into Huntington bay, itself several miles deep. In *Tiffany* v. *Town of Oyster Bay* (*supra*) the subject of the action was the title to lands under water in Cold Spring harbor. That harbor is more than five miles deep, while the headlands which afford entrance thereto are less than a mile and a half apart. In *Grace* v. *Town of North Hempstead* (*supra*) the subject-matter was the title to lands under the waters of Manhasset bay. That bay extends inland more than three miles, while the headlands at the opening thereto are less than one mile apart. In all these instances, the depth and width of the bay were many times greater than the width of the opening. Clearly, each constituted an " indentation of the sea " (Oxford Dict.); " an indentation in the shore line of a body of water " (New Standard Dict.); a large tract of " water, around which the land forms a curve " (Webster's Internat. Dict.). Consequently, they were in the strictest sense of the word " bays " forming no part of Long Island sound. We have here an entirely different case. The distance between the headlands forming the opening to this so-called bay is nearly five times greater than the set-back of the river into the easterly shore. Here is no " indentation " of the shore line of the river; no tract of water " around which the land forms a curve." Here is no harbor wherein boats at anchor might lie secure, protected from the peril of wind and wave by the projecting headlands of a " bay." Instead, we have the arc of a circle, with a radius so great that the receding shore is washed by current and tide and wave without let or

hindrance. Indeed, the argument that this curve in the river creates a bay which is no part of the Hudson river is subject to a *reductio ad absurdum*. A glance at the government map referred to will show that just north of the so-called bay under discussion, from Verplanck Point to Anthony's Nose, the river sets back so deeply into the Van Cortlandt shore line, that a straight line drawn between those points would intersect lands projecting from the westerly shore of the river. The argument advanced would lead to the ridiculous conclusion that, at points along the line, there is no Hudson river flowing by the Van Cortlandt grant. The question under consideration was not involved in the action of *Starke-Belknap* v. *N. Y. Central R. R. Co.* (*supra*), for, as already pointed out, it was expressly stipulated therein that the disputed lands were under the waters of " coves " or " bays " within the meaning of the grant.

It is true that the plaintiff's claim of title is not technically perfect. Title is traced from Stephanus Van Cortlandt in 1697 to Conklin and Bassely in the year 1736. Conveyances from Conklin and Bassely, and their successors, to Nehemiah Lounsberry in 1791 are missing. From Lounsberry to the plaintiffs title is sufficiently shown. This break in the title of some fifty-five years the plaintiffs have sought to cure by deeds of lands, other than those in question, the recitals of which indicate that during the interval the predecessors in title of Lounsberry were the owners of these lands or in possession thereof. In addition is the fact that Isaac Anderson, an upland owner, who conveyed to the New York Central Railroad Company its present right of way in the year 1847, was the predecessor in title of the plaintiffs in respect to all the uplands, through the ownership of which the plaintiffs claim title to the under-water lands. It does not lie in the mouth of the appellant to dispute the title of their common grantor. It is also true that the common grantor of both parties, John G.

Morton, in making a grant to the New York Central in the year 1910, bounded the grant in part by the lands under water, now in dispute, conveyed by the State of New York to the railroad in the year 1873, and thereafter, in the same year, made the conveyance of his ungranted remaining lands to the plaintiffs by a deed under which the plaintiffs now claim title. We see in the prior conveyance no acknowledgment that the grant made by the State in the year 1873 to the New York Central carried a valid title, and find that the plaintiffs are not thereby estopped.

The judgment in the first action should be reversed and a new trial granted, with costs to the appellant to abide the event. The judgment in the second action should be affirmed, with costs.

POUND, Ch. J., CRANE, LEHMAN, O'BRIEN, HUBBS and CROUCH, JJ., concur.

Judgment accordingly.