In the Matter of JEAN B. JENNINGS et al., as Executors and Trustees under the Will of WALTER JENNINGS, Deceased, et al., Appellants, against WILLIAM WATT et al., as Members of the Town Board of Huntington et al., Respondents.

(Argued April 17, 1934; decided May 22, 1934.)

*M. E. Harby* for appellants. The Appellate Division erred in deciding that the State Engineer's decision as to town boundaries would result in a change of the county line which only the Legislature could effect. (*State* v. *St. Louis County,* 117 Minn. 42; *Polk's Lessee* v. *Gentry,* 1 Over. [Tenn.] 269; *People* v. *Stephens,* 71 N. Y. 527; *United States* v. *Arredondo,* 6 Pet. 691; *The Confiscation Cases,* 20 Wall. 99; *Stoehr* v. *Wallace,* 255 U. S. 239; *Brown* v. *Mayor,* 63 N. Y. 239; *People ex rel. Dady* v. *Prendergast,* 144 App. Div. 308; 203 N. Y. 1.) The State Engineer was authorized to decide a dispute as to jurisdictional boundaries between any towns of the State. He was not restricted to towns included in one county. (1 R. S. 182; *Matter of La Rocca* v. *Flynn,* 257 N. Y. 5; *People* v. *Long Island R. R. Co.,* 194 N. Y. 130; *Matter of Marchant* v. *Mead-Morrison Mfg. Co.,* 252 N. Y. 284; *Tompkins* v. *Hunter,* 149 N. Y. 117; *Fire Dept.* v. *Stanton,* 159 N. Y. 225; *Trustees of Brookhaven* v. *Strong,* 60 N. Y. 56; *Town of Southampton* v. *Mecox Bay Oyster Co.,* 116 N. Y. 1; *People* v. *Charbineau,* 115 N. Y. 433; *Matter of Washington St. R. Co.,* 115 N. Y. 442; *Rumsey* v. *People,* 19 N. Y. 41; *Matter of City of New York,* 217 N. Y. 1.)

*Isaac R. Swezey* and *Theodore I. Colyer* for respondents. The State Engineer and Surveyor changed the boundary line, and did not define it. (*Tiffany* v. *Town of Oyster Bay,* 209 N. Y. 1; *Sage* v. *Mayor,* 154 N. Y. 61; *Fulton L., H. & P. Co.* v. *State,* 200 N. Y. 400.) The fact that the State Engineer and Surveyor located the boundary line in the middle of Cold Spring harbor and that the town of Hungtington never objected thereto or disputed the same over a period of fifty years, does not prevent or estop the town of Huntington from asserting that it is not the correct location of the line. (*Pollitz* v. *Wabash R. R. Co.,* 207 N. Y. 113; *Brown* v. *Ward,* 246 N. Y. 400;

*Wells* v. *Johnston,* 171 N. Y. 324; *People* v. *Santa Clara Lumber Co.,* 213 N. Y. 64.) Since the State Engineer and Surveyor had no power to define and locate the boundary line between the towns of Oyster Bay and Huntington, the line being coincident with the boundary line between Suffolk and Queens counties, the action of the supervisors of the towns of Huntington and Oyster Bay, and of Suffolk and Queens counties in laying the dispute over the boundary line before him and his decision thereon was unauthorized and *ultra vires* and, therefore, the respective towns are not bound by the doctrine of acquiescence in the location of the boundary line as defined by him. (*Matter of Niland* v. *Bowron,* 193 N. Y. 180; *Moore* v. *Mayor,* 73 N. Y. 238; *People* v. *Santa Clara Lumber Co.,* 213 N. Y. 64; *Smith* v. *City of Philadelphia,* 227 Penn. St. 423; *De Kam* v. *City of Streator,* 316 Ill. 123; *Wickman* v. *City of Placerville,* 147 Cal. 162; *Minneapolis, St. P., R. & D. El. T. Co.* v. *City of Minneapolis,* 145 N. W. Rep. 609; *Eddy Valve Co.* v. *Town of Crown Point,* 76 N. E. Rep. 536.)

*John J. Bennett, Jr., Attorney-General (Warren H. Gilman, Henry Epstein* and *Edward L. Ryan* of counsel), for People of the State of New York.

HUBBS, J. In 1932 relators caused to be delivered to the Supervisor of the town of Huntington, county of Suffolk, a petition praying that certain adjoining territory be annexed to the village of Lloyd Harbor, pursuant to the provisions of section 348 of the Village Law (Cons. Laws, ch. 64). The Town Board of the town decided that the petition did not conform to section 348 because the westerly boundary of the territory described in the petition extended beyond the easterly high-water mark of Cold Spring harbor and the westerly boundary of the town of Huntington extended only to such high-water mark. It was decided, therefore, that part of the territory described in the petition was outside of the boundaries of the town of Huntington

and within the town of Oyster Bay, Nassau county (formerly part of Queens county). The Town Board, therefore, refused its consent to the annexation to the village of Lloyd Harbor of the territory described in the petition. The order of certiorari granted herein presents the question as to the location of the boundary line between the town of Huntington and the town of Oyster Bay. The Appellate Division confirmed the decision of the Town Board and dismissed the proceeding.

Settlements were made in the town of Huntington in the year 1653, and deeds were procured from the Indians. In 1666, Governor Nichols, the English Governor of the Colony of New York, granted a patent to that town describing its boundaries. In 1683, an act was passed by the Legislature of the colony dividing the colony into counties. The town of Huntington became a part of the county of Suffolk and the town of Oyster Bay a part of Queens county. In 1688, Governor Dongan granted a patent to the town of Huntington. In 1694 the town received what is known as the Fletcher patent. The patent to the town of Oyster Bay was granted in 1677 by Governor Andros. The Constitution of the State of New York as originally adopted by paragraph No. 36 confirmed those patents.

In 1788, by chapter 63 of the laws of that year, the State was divided into sixteen counties, including Queens and Suffolk, and by chapter 64 the counties were divided into towns. The town of Oyster Bay in Queens county was an eastern border town and the town of Huntington in Suffolk county was a western border town. The line between the two towns constituted the line between the two counties according to the original enactment. The physical location of that line is the question in dispute in this proceeding.

From the earliest colonial days, at least, down to the year 1860, there occurred various disputes between the two towns as to the correct location of the boundary

line in question. The early grants to the two towns were ambiguous. From the descriptions in those grants, it was difficult if not impossible to locate upon the ground the exact boundary line. That fact is made clear from the various opinions rendered at the Appellate Division and in this court in the case of *Tiffany* v. *Town of Oyster Bay* (141 App. Div. 720; affd., 209 N. Y. 1).

In 1797 the Legislature, by chapter 54, authorized the Surveyor-General (thereafter designated State Engineer and Surveyor) to survey and mark the bounds of counties. By 1 Revised Statutes, chapter 8, title 6, he was directed to retain in his office a map of the State and designate thereon the bounds of all towns and counties erected or altered by the Legislature. In case he was unable from the descriptions to delineate upon the map the bounds of any town, he was directed to cause the Supervisor of the town to cause a survey to be made. Sections 5 and 6 of the act read:

" § 5. Whenever a dispute shall arise between the officers of two or more towns, respecting the bounds of either of such towns, on the same being represented to the surveyor-general, he shall hear the allegations and proofs of the parties, and if necessary, shall direct a survey to be made, and shall determine such dispute.

" § 6. Such determination shall be filed in the office of the secretary of state, and shall be conclusive upon the subject, until the legislature shall, by law, otherwise direct."

The towns of Huntington and Oyster Bay applied to the State Engineer and Surveyor, the successor of the Surveyor-General (Laws of 1848, ch. 72), to locate the jurisdictional boundary between the two towns. He made a determination locating the line in conformity with the provisions of the statute. His decision was printed as chapter 530 of the Laws of 1860.

His decision located the boundary line west of the territory involved in this proceeding, and if that decision

is binding and in effect, then the territory herein involved all lies within the town of Huntington.

It is undisputed that the decision so made and recorded was acquiesced in by both towns from that time down to the commencement of this proceeding, a period of over seventy years. Each town exercised jurisdiction up to the boundary line so located and levied and collected taxes in accordance with such established line. Official maps have treated the line so located as the correct boundary line and the Legislature has never by enactment changed the line or questioned it in any way.

The respondents contend and the Appellate Division has decided that the act of the State Engineer and Surveyor was illegal, without jurisdiction and void because it was an attempt to change a boundary line between counties which could be done only by an act of the Legislature. We cannot agree with such conclusion.

It must be borne in mind that, at the time, the boundary line in question was not marked by monuments; its description was ambiguous and indefinite, and it had been the subject of disputes since early colonial times.

The Legislature, by chapter 54 of the Laws of 1797, authorized the Surveyor-General to survey and mark the boundaries of the counties of the State. 1 Revised Statutes, chapter 8, title 6, sections 1 to 7, established a tribunal to settle disputes between towns about boundary lines, by providing that the Surveyor-General should upon the application of towns " hear the allegations and proofs of the parties, and if necessary, shall direct a survey to be made, and shall determine such dispute," the determination to be filed in the office of the Secretary of State and to " be conclusive upon the subject, until the legislature, shall, by law, otherwise direct."

It seems clear to us that the Legislature did not attempt to confer power upon the Surveyor-General to establish new boundary lines. It did in unmistakable terms authorize him to determine the physical location

of an existing boundary line by making a line, which was vague, indefinite and uncertain, definite and certain, and thereby determine disputes between towns. (*State ex rel. Simpson* v. *County of St. Louis*, 117 Minn. 42.)

Respondents concede that if the State Engineer had jurisdiction over the matter, his decision would have been binding and conclusive. It is contended that his decision did not have that effect because the boundary line in question between the towns was also the boundary line between the counties and that he had no jurisdiction to change a county boundary line. We believe that there are at least two conclusive answers to such contention: *First*, he did not change the county line, but simply physically located it, and made the line which was uncertain and floating, definite and certain. *Second*, having jurisdiction to locate the town line, his act in so doing did not have the effect of changing the county line though the town and county lines happened to be co-incident. As the same line constituted the town and county boundary, it was proper for him, in fixing the town line, to locate the county line, as that was incidental to locating the town line. (*Rhode Island* v. *Massachusetts*, 12 Pet. [U. S.] 657; *Handly's Lessee* v. *Anthony*, 5 Wheat. [U. S.] 374; *Virginia* v. *West Virginia*, 11 Wall. [U. S.] 39, 53; *People* v. *Hillman*, 246 N. Y. 467.)

Each town had claimed the territory in question by virtue of original grants of contiguous territory. The grants attempted by description to indicate the common boundary. The descriptions contained in the grants were so indefinite and ambiguous that the exact location of the boundary became a subject of dispute. The determination of the location on the ground of the boundary line presented a question of fact. When that question of fact was determined and the line located in accordance with the findings, the line so located did not constitute a new boundary line. It was the boundary line described in the grants physically located on the ground. The fact

that when so located it corresponded with the boundary line between the two counties did not constitute the establishment of a new boundary line between the counties in violation of the law which prevented a change in a county boundary line except by the Legislature. (*Rhode Island* v. *Massachusetts, supra; Virginia* v. *West Virginia, supra.*)

We have no doubt that the Legislature had the power to enact that the Surveyor-General should have jurisdiction to settle disputes between towns as to boundary lines and to locate the lines in dispute. As to that, the statute is clear and not subject to a contrary construction. In fact, the respondents so concede. Therefore, we conclude that the line established by the State Engineer and Surveyor, as described in chapter 530 of the Laws of 1860, was made under authority of law, was within his jurisdiction, and was binding upon the towns. (*People ex rel. Case* v. *Collins*, 19 Wend. 56; *Osterhoudt* v. *Rigney*, 98 N. Y. 222, 234; *People ex rel. Loughran* v. *Railroad Comrs.*, 158 N. Y. 421, 428.)

In fact, the determination has apparently been recognized and approved by the Legislature by subsequent enactments. (Laws of 1872, ch. 105; Laws of 1886, ch. 667. See Revisers' note, 1 R. S. [6th ed.] p. 204.)

The case of *Tiffany* v. *Town of Oyster Bay* (209 N. Y. 1, 11), relied upon by respondents, involved the question of title to land below the low-water mark on the westerly shore of Cold Spring harbor, adjacent to the upland owned by the plaintiff in that case. The land there involved was across the harbor and westerly of the territory here involved. In that case, this court was required to determine whether the so-called Andros patent of September 29, 1677, defining the territory of the town of Oyster Bay, included the lands there in question.

In deciding that the patent covered the land in question, the opinion states that " The whole of the land under

water in Cold Spring harbor and the bay known as Oyster bay was granted to the town of Oyster Bay by the Andros patent of 1677." Standing alone, the statement would sustain the contention of the respondents that the town of Huntington, situate on the east side of Cold Spring harbor, extended only to the high-water line. The town of Huntington was not a party to the *Tiffany* suit or in any way represented in that suit.

The respondents, nevertheless, contend that the decision in that case has the effect of depriving the town of Huntington of territory within its boundaries as established by the determination of the State Engineer and Surveyor over fifty years before. That cannot be.

The State Engineer and Surveyor, in locating the boundary, pursuant to the provisions of the statute, acted judicially. (*People ex rel. Loughran* v. *Railroad Comrs.*, *supra*, at p. 428; *Van Wormer* v. *Mayor*, 15 Wend. 262.) His decision had the effect of a judgment between the parties, the towns of Huntington and Oyster Bay. It definitely and finally established their rights and became conclusive upon them until changed according to law. It has never been altered in any way.

The decision in the *Tiffany* case, in which the town of Huntington was not a party, did not and could not deprive it of any part of its territory. (*Deposit Bank* v. *Frankfort*, 191 U. S. 499; *Ashton* v. *City of Rochester*, 133 N. Y. 187, 192.)

Respondents, landowners in the town of Huntington, are in privity with the town of Huntington and may avail themselves of the decision of the State Engineer and Surveyor which located the boundary line. (*Ashton* v. *City of Rochester*, *supra*, at p. 192; *Oklahoma* v. *Texas*, 256 U. S. 70.)

As a matter of fact, the decision of the State Engineer and Surveyor, made in 1860, was not referred to in the opinion in the *Tiffany* case and was not called to the attention of the court.

The order of the Appellate Division should be reversed, and the action of the Town Board vacated, with costs, and the respondents directed to deliver to the trustees of Lloyd Harbor relators' petition, with the Town Board's consent, as required by section 348 of the Village Law.

POUND, Ch. J., CRANE, LEHMAN, O'BRIEN and CROUCH, JJ., concur.

Ordered accordingly.