◼ In the Matter of KINGS ESTATES LTD. PARTNERSHIP, Respondent, v TOWN OF CHESTER, Appellant, and TOWN OF WARWICK et al., Respondents. (And Another Related Proceeding.)—Casey, J. Appeal (transferred to this court by order of the Appellate Division, Second Department) from a judgment of the Supreme Court (Owen, J.), entered January 5, 1989 in Orange County, which, *inter alia,* granted petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of various respondents finding that petitioner's subdivision maps misrepresented the town line between the Towns of Warwick and Chester.

The boundary line between the Towns of Warwick and Chester in Orange County passes through petitioner's property. In order to develop the property, petitioner obtained subdivision approval from the Town of Warwick Planning Board for a portion of the property located in that town. Shortly after the subdivision map was filed in the Orange County Clerk's office, respondent Tax Map Supervisor of Orange County determined that the town boundary line shown on petitioner's map deviated by some 140 to 180 feet from the boundary line shown on the county's tax map, so that a number of lots were determined to be in the Town of Chester rather than in the Town of Warwick. Respondents Assessors for the Towns of Warwick and Chester prepared their respective assessment rolls in accordance with the Tax Map Supervisor's determination. Petitioner's grievances were denied on the basis of that determination.

Petitioner commenced a CPLR article 78 proceeding to annul the Tax Map Supervisor's determination, and also

commenced a proceeding pursuant to RPTL article 7 to review and correct the disputed tax assessments. The latter proceeding, of course, was entirely dependent upon the outcome of the article 78 proceeding. Supreme Court concluded that there were issues of fact concerning the accuracy of both the tax map and petitioner's subdivision map. Following a hearing on these issues, Supreme Court found that the Tax Map Supervisor's determination lacked a rational basis, and a judgment granting the relief appropriate to such a finding was entered in petitioner's favor. Only the Town of Chester (hereinafter respondent) appeals from the judgment.

Respondent's appeal focuses exclusively on Supreme Court's authority to grant any relief to petitioner. Respondent contends that since its existence as a town was created by an act of the State Legislature which included a metes and bounds description (L 1845, ch 32), the court stepped outside its judicial role and engaged in a legislative function when it altered the boundary line established by the Legislature. Before a boundary line can be altered, it must first have an established location. Respondent seems to assume that the boundary line shown on the tax map constituted the established location of that line. Thus, according to respondent, any finding that the line is located other than as shown on the tax map constitutes an alteration or the legislating of a new line. As is clear from the record, however, the central issue raised by the petition concerned the accuracy of the tax map. It was undisputed that the Legislature's description of the boundary is vague and inaccurate (for example, it contains a closure error of approximately 1½ miles), and the court was required to determine whether the boundary line shown on the tax map accurately reflected what was intended by the Legislature's description. In so doing the court weighed the relevant evidence and clearly engaged in a purely judicial function.

Next, respondent argues that the Supreme Court lacks subject matter jurisdiction in any action or proceeding involving a dispute over the location of a town boundary line except in an action brought by one of the towns affected by the dispute. Respondent bases this claim upon County Law § 228, which provides that "[j]urisdiction is hereby conferred upon the supreme court and the county court to hear and determine disputed town boundaries in an action brought by any town affected thereby". Respondent claims that the Legislature's grant of jurisdiction to hear and determine disputed town boundaries in an action brought by a town necessarily precludes the court's exercise of jurisdiction to hear and

determine disputed town boundaries in any other action or proceeding. Supreme Court is a court of general jurisdiction (NY Const, art VI, § 7 [a]). "[U]nless its jurisdiction has been specifically proscribed", Supreme Court is competent to entertain all causes of action (*Thrasher v United States Liab. Ins. Co.*, 19 NY2d 159, 166). The petition asserts a cause of action, pursuant to CPLR 7803, to annul a final and binding administrative determination, and there is nothing in County Law § 228 to suggest that Supreme Court's jurisdiction over this cause of action "has been specifically proscribed" merely because a town boundary line dispute is involved. We also note that although the Town of Warwick was named as a party respondent, it promptly sided with petitioner and acted throughout the proceeding as an adversary to respondent, not petitioner. Accordingly, even if County Law § 228 could be read as somehow limiting Supreme Court's jurisdiction to disputes between towns, such a dispute was present here.

Respondent also contends that if jurisdiction is not proscribed by County Law § 228, Supreme Court lacked the authority to resolve the boundary line dispute without ordering a survey. Unquestionably, a survey of the boundary line would have been relevant, but the court was under no affirmative duty to fill the evidentiary void created by respondent's failure to obtain and present evidence on its behalf. Respondent's reliance on *Matter of Jennings v Watt* (264 NY 306) is misplaced, for in that case a statute specifically directed the surveyor general to order a survey, if necessary, in his role as the arbiter of town boundary line disputes (*supra*, at 311).

To establish the accuracy of the location of the boundary line shown on its subdivision map, petitioner introduced two county highway maps which were used during the preparation of the subdivision map. Pursuant to CPLR 4522, Supreme Court ruled that these ancient documents were prima facie evidence of their contents, including the location of the boundary line. Petitioner also presented expert testimony as to the manner in which the subdivision map was prepared and introduced a former survey of the property used in the preparation of the subdivision map. Petitioner's expert also testified that tax maps are often inaccurate. Respondent offered no expert evidence and its witnesses were unable to provide any testimony as to the manner in which the tax map was prepared or concerning the data relied on in locating the boundary line as shown on the tax map. Judgment in favor of petitioner was properly granted, and we find no merit in respondent's arguments on appeal.

Judgment affirmed, with costs to petitioner against respondent Town of Chester. Mahoney, P. J., Kane, Casey, Levine and Mercure, JJ., concur.