JENNIE LAURA J. STARKE-BELKNAP, Respondent, *v.* NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

Second Department, June 10, 1921.

Ejectment — colonial land grant — rule of stare decisis observed — grant construed to include land under bays and coves in Hudson river — grant, though to individual, not strictly construed.

In construing colonial land grants the rule of *stare decisis* will be faithfully observed, since more than private rights are often concerned.

The terms of a colonial land grant, including " in the said Northerly Line all Meadows Marshes Coves Bayes and Necks of Land and Peninsula's that are adjoyning or extending into Hudsons River within the Bounds of the said Line," and which grants " fishing in Hudson's river, so far as the bounds of the said lands extends upon the same," aptly express a boundary along the necks or points of land so as to include bays and coves as part of the grant.

Said grant, though to an individual, should be liberally construed in favor of the grantee.

APPEAL by the defendant, New York Central Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Westchester on the 2d day of July, 1918, upon the decision of the court rendered after a trial at the Rockland Special Term in an action of ejectment in which plaintiff was adjudged owner in fee of the premises set forth in the complaint, with $6,088.18 as damages for withholding the property.

The complaint described two parcels, one to the east and the other to the west of defendant's railroad tracks along the shore

of the Hudson river in the town of Cortlandt, Westchester county, both parcels having originally been below high-water mark, as parts of bays or coves on the eastern side of said river. In straightening its tracks the defendant filled in one of these parcels, and in part appropriated the other parcel under a land grant or patent from the State of New York for this and other submerged lands on the river, dated December 26, 1873. The same question has arisen here as in some Colonial grants in Long Island charters, namely, whether this Royal grant by letters patent of June 17, 1697, to Stephanus Van Cortlandt, creating Cortlandt Manor (Book 7 of Patents, p. 145, office Secretary of State) had included these submerged lands. This patent included lands extending from the Hudson eastward to the Connecticut boundary. It lay between the Manor of Phillipsburgh on the south and the land of Adolph Phillips on the north. The boundary here concerned is the line along the river, which read: " Running along the said Hudsons River Northerly as the said River Runns unto the North side of a high hill in the highlands Commonly Called and knowne by the Name of Anthonys Nose to a Red Cedar Tree which makes the Southermost Bounds of the Land now in the Tenure and Occupacon of Mr. Adolph Phillips including in the said Northerly Line all the Meadows Marshes Coves Bayes and Necks of Land and Peninsula's that are adjoyning or extending into Hudsons River within the Bounds of the said Line." This patent also included lands on the west side of the river (confirming a prior grant by Governor Dongan), which only incidentally concern this appeal. The patent continued: " Know Ye, that of our special grace, certain knowledge and mere motion, we have given, granted, ratified and confirmed, and by these presents do for us, our heirs and successors, give, grant, ratify and confirm unto our said loving subject, Stephanus Van Cortlandt, all of the afore-certain parcel and tracts of land and meadow within their several and respective limits and bounds aforesaid, together with all and every of the messuages, tenements, buildings, barns, houses, out-houses, stables, edifices, orchards, gardens, inclosures, fences, pastures, fields, feedings, woods, underwoods, trees, timber, swamps, meadows, marshes, pools, ponds, lakes, fountains, waters, water courses,

rivers, rivulets, runs, streams, brooks, creeks, harbors, coves, inlets, outlets, islands of meadows, necks of land and meadow, peninsulas of land and meadow, ferries, fishing, fowling, hunting and hawking, *and the fishing in Hudson's river, so far as the bounds of the said lands extends upon the same,* quarries, minerals, (silver and gold mines only excepted), and all the rights, members, liberties, privileges, jurisdictions, pre-eminences, emoluments, to the afore recited certain parcels or tracts of land or meadows within their several and respective limits and bounds aforesaid, belong or in any ways appertaining or accepted, reputed, taken, known or occupied as part, parcel or member thereof, to have and to hold all the afore recited certain parcels and tracts of land and meadows within their several and respective limits and bounds aforesaid, together with all and every of the messuages, tenements, buildings, barns, houses, outhouses, stables, edifices, orchards, gardens, enclosures, fences, pastures, fields, feedings, woods, under-woods, trees, timber, swamps, meadows, marshes, pools, ponds, lakes, fountains, water, water-courses, rivers, rivulets, runs, streams, brooks, creeks, harbors, coves, inlets, outlets, islands of land and meadow, necks of land and meadow, peninsulas of land and meadow, ferries, fishing, fowling, hunting and hawking, and the fishing on Hudson's river as far as the bounds of the said lands extends upon the said river, quarries, mines, minerals, (silver and gold excepted), and all other the rights, members, liberties, privileges, jurisdictions, pre-eminences, emoluments, royalties, profits, benefits, advantages, hereditaments and appurtenances whatsoever to the afore recited certain parcels or tracts of land and meadow within their several and respective limits and bounds aforesaid, belonging or in any ways appertaining or accepted, reputed, taken, known or occupied as part, parcel or member thereof unto the said Stephanus Van Cortlandt, his heirs and assigns, to the sole and only proper use, benefit and behoof of him the said Stephanus Van Cortlandt, his heirs and assigns forever."

The court found and decided that this Royal grant included the coves and bays which are appurtenant to plaintiff's upland, and that, therefore, the State of New York had not title to the premises to make the grant to the defendant, since the State grant of 1873 could not divest the plaintiff and her

predecessors of their prior title to these lands. Defendant appealed from this judgment on July 3, 1918.

*William F. Bleakley,* for the appellant.

*Frank M. Avery* [*Earl A. Darr* with him on the brief], for the respondent.

PUTNAM, J.:

Regarding few questions should the rule of *stare decisis* be more faithfully observed than on the interpretation of crown grants involving shore and water rights. More than private rights are often concerned; and where a construction has been deliberately adopted and declared, it should not be disturbed save by the court of last resort. Colonial grants on Long Island have been adjudged to include the lands under bays and harbors. (*Robins* v. *Ackerly,* 91 N. Y. 98; *Tiffany* v. *Town of Oyster Bay,* 209 id. 1; *Grace* v. *Town of North Hempstead,* 166 App. Div. 844; affd., 220 N. Y. 628.) In this boundary line the words " Coves bayes and Necks of Land " more clearly describe and convey indentations in a river's course than did the formula " Havens, Harbors, Rivers, Creekes, Woodland, Marshes " in *Grace* v. *Town of North Hempstead* (*supra*), or the phrase " including all the Necks of Land and Islands within the aforesd described Bounds and Limmitts " in *Tiffany* v. *Town of Oyster Bay* (*supra*). To appellant's contention that this grant, being to an individual, should have a strict construction, there are two answers: *First.* This grant is in a special form. It was of old held that in a suit to revoke a crown patent, the recitals of facts not within the knowledge of the government are regarded as the suggestions of the patentee. The King is not estopped by a recital of his patent, but the law will rather adjudge him to be deceived. (*Case of Alton Woods,* 1 Coke, 43.) So Blackstone says that because a royal grant made at the suit of the grantee is to be taken most beneficially for the king, " it is usual to insert in the king's grants, that they are made, not at the suit of the grantee, but ' *ex speciali gratia, certa scienta, et mero motu regis* ' (by the special favor, certain knowledge, and mere motion of the king); and then they have a more liberal construction " (Comm. bk. II, p. 347), which is the formula of this Van

Cortlandt grant. *Second.* Such crown grants have long received this liberal construction in New York even in a controversy that aroused great public feeling (*People* v. *Van Rensselaer,* 9 N. Y. 291, 322), and later in a royal grant of lands under tidal waters. (*DeLancey* v. *Piepgras,* 138 N. Y. 26.)   We are familiar also with the grant of appurtenant rights of " fishing, fowling, hunting and hawking."   But here a new and significant clause follows this stereotyped enumeration of rights of sport — " and the fishing in Hudson's river, so far as the bounds of the said lands extends upon the same."   The franchise of " ferries " involves more than a mere upland right.   These terms taken together aptly express a boundary along the necks or points of land so as to include bays and coves as part of this manor.   And this construction is not against the rule in *Sage* v. *Mayor* (154 N. Y. 61), which dealt with the New Harlem charter from Governor Nichols.   This granted lands " bounded on one side by the ' Harlem River or any part of the said river on which this land ' (of Manhattan) ' doth abut  *  *  *  together with all the soils, creeks, quarries, woods, meadows, pastures, marshes, waters, lakes, fishing, hawking, hunting and fowling and all other profits, commodities, emoluments and other hereditaments belonging to the said lands and premises within the said bounds and limits set forth, belonging or in anywise appertaining.' "   (pp. 62, 63.)   This reference to the bounds and limits was held not to extend the grant out into the river, or beyond its western bank.   But " Meadows," " pastures " and " marshes " there used describe land.   Coves, bays and inlets are to describe parts of the river and the lands beneath.   Furthermore the right to fish in this river is expressly granted so far as the bounds extend " upon " the river — which seems to me conclusive.

Hence, I advise that the judgment be affirmed, with costs.

Present — BLACKMAR, P. J., MILLS, RICH, PUTNAM and JAYCOX, JJ.

Judgment unanimously affirmed, with costs.