CORNELIA KELLUM, Respondent, v. ALICE J. CORR et al., Respondents, and THE MISSION OF THE IMMACULATE VIRGIN FOR THE PROTECTION OF HOMELESS AND DESTITUTE CHILDREN, Appellant.

Real property — partition — when joint tenant or tenant in common, not in possession of land, may maintain action for partition thereof — evidence necessary to maintain presumption of lost grant supported by claim of title.

1. A person claiming as joint tenant or tenant in common, even though not in actual possession, may now maintain a suit for partition in which all questions of title affecting the entire property may be tried and adjudicated with the same effect as was formerly the practice in actions of ejectment. (Code Civ. Pro. § 1539 *et seq.*)

2. The presumption of a lost grant cannot be supported by a claim of title unless it is accompanied by proof of actual or constructive possession characterized by claims and acts of ownership during the period required by law.

3. Upon examination of the facts, *held*, that while the defendant for years claimed title and performed acts upon the land in question which indicated ownership, there was no actual or constructive possession which these claims and acts tended to characterize; and that the period of such possession as was established falls short of the continuous twenty years which the law requires, so that to presume a grant would be practically to shorten the Statute of Limitations.

*Kellum* v. *Corr*, 149 App. Div. 200, affirmed.

(Argued June 12, 1913; decided December 9, 1913.)

APPEAL from a final judgment, entered February 26, 1912, upon an order of the Appellate Division of the Supreme Court in the second judicial department, which affirmed an interlocutory judgment entered upon the report of a referee in an action of partition. ·

The facts, so far as material, are stated in the opinion.

*Austen G. Fox, Theodore De Witt* and *William J. Fanning* for appellant. The adverse possession by the appellant of substantially the entire premises described in the complaint disentitles respondent from maintaining this action. (*Florence* v. *Hopkins,* 46 N. Y. 182; *Sullivan* v. *Sullivan,* 66 N. Y. 37; *Haskell* v. *Queen,* 21 N. Y. Supp. 357; *Dawson* v. *Campion,* 24 Misc. Rep. 234.) The referee and the Appellate Division erred in their determination that the trust deed of 1818 did not operate upon or convey the lands in controversy. (*Thayer* v. *Finton,* 108 N. Y. 394; *Smith* v. *Sweet,* 90 Me. 528; *Jones* v. *Webster Woolen Co.,* 85 Me. 210; *Hobbs* v. *Payson,* 85 Me. 498; *Coleman* v. *M. B. Imp. Co.,* 94 N. Y. 229; *McKinnon* v. *Bliss,* 21 N. Y. 206; *Stronghill* v. *Buck,* 14 Jurist, 741; *Reed* v. *McCord,* 41 N. Y. 435; *House* v. *Lockwood,* 137 N. Y. 259; *Borst* v. *Corey,* 16 Barb. 136.) The trust deed of July 24, 1818, was intended to and did operate upon and convey the lands in controversy. (*Thayer* v. *Finton,* 108 N. Y. 394; *Jones* v. *Smith,* 73 N. Y. 205; *Portman* v. *Mills,* 8 L. J. Eq. 161; *Mott* v. *Eno,* 181 N. Y. 346; *Graham* v. *Stern,* 168 N. Y. 517; *Watson* v. *City of New York,* 67 App. Div. 573; 175 N. Y. 475; *Livingston* v. *Arnoux,* 56 N. Y. 507, 509; *Cook* v. *Barr,* 44 N. Y. 156; *People* v. *Holmes,* 166 N. Y. 540; *Smith* v. *N. B. Society,* 123 N. Y. 85.) The trust deed of 1818 and the evidence bearing upon its interpretation are legally competent and sufficient to rebut the presumption of continuance of seizin in the descendants of Rachel Banister, and do rebut such presumption and establish a change of ownership. (*Thomp-*

*son* v. *Simpson*, 128 N. Y. 270; *Mott* v. *Eno*, 181 N. Y. 346; *Matter of Marcellus*, 165 N. Y. 70; *Matter of Fraser*, 92 N. Y. 239; *Jackson* v. *Schoonmaker*, 7 Johns. 12; *Village of Oxford* v. *Willoughby*, 181 N. Y. 155; *Barnes* v. *Mawson*, 1 M. & S. 77; *Russell* v. *Schuyler*, 22 Wend. 277; *Jackson* v. *Russell*, 4 Wend. 543; *Clark* v. *Wethy*, 19 Wend. 320.) The appellant has good paper title through the trust deed of 1818, and the deed from the trustees Foster and Bogardus, to Benjamin C. Lockwood dated March 12, 1832. (*Roe* v. *Strong*, 119 N.Y. 316; 1 Greenl. on Ev. [16th ed.] 430, § 301; *Burr* v. *Broadway Ins. Co.*, 16 N. Y. 267; *N. Y. L. Ins. Co.* v. *Aitkin*, 125 N. Y. 660; *Loomis* v. *Jackson*, 19 Johns. 448; *Jackson* v. *Clark*, 7 Johns. 217; *Worthington* v. *Hyler*, 4 Mass. 195; *Jackson* v. *Schoonmaker*, 7 Johns. 12; *Jackson* v. *Murray*, 7 Johns. 5; *Jackson* v. *Laroway*, 3 Johns. Cas. 283; *Putnam* v. *Stewart*, 97 N. Y. 411.) The appellant has established title by general presumption. (*Bennett* v. *Garlock*, 79 N. Y. 302; *Anderson* v. *Mather*, 44 N. Y. 249; *Wood* v. *Mather*, 38 Barb. 473; *People* v. *Powers*, 197 N. Y. 104; *Schauber* v. *Jackson*, 2 Wend. 13; Best on Ev. § 364; 1 Greenl. on Ev. § 46; *Mission* v. *Cronin*, 143 N. Y. 524; *Roe* v. *Strong*, 119 N. Y. 316; *Fletcher* v. *Fuller*, 120 U. S. 534; *Baldwin* v. *Brown*, 16 N. Y. 359.) The determination of the referee that the interest of Thomas Banister and Rachel Banister in the premises described in the complaint in this action has descended to and become vested in Cornelia Kellum, Alice Corr and the New York City Water Front Company, and that they are owners of the interests specified in said conclusion is erroneous. (*Adams* v. *Rockwell*, 16 Wend. 285; *Baldwin* v. *Brown*, 16 N. Y. 359; *Jackson* v. *Schoonmaker*, 7 Johns. 12; *Reed* v. *Farr*, 35 N. Y. 113; *Avery* v. *Empire Woolen Co.*, 82 N. Y. 588; *Goodhue* v. *Cameron*, 142 App. Div. 470; *Herse* v. *Mazza*, 100 App. Div. 59; *Roe* v. *Strong*, 119 N. Y. 316; *Fletcher* v. *Fuller*, 120 U. S. 534.)

*Charles S. Noyes, Eph. A. Karelsen* and *Orlando B. Batten* for respondents. A plaintiff claiming an interest in fee in real property can maintain partition whether in or out of possession, and may make any party in actual possession and claiming the whole title adversely a party to the suit and try out the question of title. (*Western* v. *Stoddard*, 137 N. Y. 119; *Satterlee* v. *Kobbe*, 173 N. Y. 91; *Wallace* v. *McEchron*, 176 N. Y. 424; *Obermeyer* v. *Behn*, 143 App. Div. 440; 195 N. Y. 588; *Brown* v. *Feek*, 204 N. Y. 238; *Brown* v. *Crossman*, 206 N. Y. 471; *Lawrence* v. *Norton*, 116 App. Div. 896; *Johnson* v. *Ayleshire*, 130 App. Div. 178; *Place* v. *Kennedy*, 89 App. Div. 167; *Place* v. *Rogers*, 101 App. Div. 193; *Leidenthal* v. *Leindenthal*, 121 App. Div. 269; *De Baun* v. *Pardee*, 139 N. Y. Supp. 1077; *Lyons Nat. Bank* v. *Shuler*, 139 N. Y. 405.) The language of the description in the deed of July 24, 1818, to Foster and Bogardus, under which the appellant claims title, cannot be construed to include the premises described in the complaint. (*O'Donohue* v. *Cronin*, 62 App. Div. 379, 382; *Cravath* v. *Baylis*, 113 App. Div. 666; 192 N. Y. 559; *Clark* v. *N. Y. Life Ins. Co.*, 64 N. Y. 33; *Village of Oxford* v. *Willoughby*, 181 N. Y. 155; *Matter of Webster*, 106 App. Div. 360; 186 N. Y. 549; *Enders* v. *Sternburgh*, 1 Keyes, 264; *Jones* v. *Smith*, 73 N. Y. 206; *Sherman* v. *McKeon*, 38 N. Y. 266; *Jackson ex dem. Stevens* v. *Stevens*, 16 Johns. 110; *Prentice* v. *Northern R. R. Co.*, 154 U. S. 163; *Parker* v. *Kane*, 22 How. [U. S.] 1.) The lower courts properly determined that the trust deed of 1818 did not operate upon the lands in controversy. (*Van Gelder* v. *Van Gelder*, 77 N. Y. 446; *Busby* v. *Jones*, 73 N. Y. 62; *Van Winkle* v. *Van Winkle*, 95 App. Div. 605; 184 N. Y. 192.) The deed from Foster and Bogardus, trustees, to Benjamin C. Lockwood, of March 12, 1832, is not a deed of beach lots 4 and 5 of the second division, the premises in suit. (*Barhydt* v. *Ellis*, 45 N. Y. 107; *Miller* v. *Hannibal, etc., R. R. Co.*, 90 N. Y. 433; Gerard on Titles [5th ed.], 539;

*Mason* v. *White*, 11 Barb. 173; *Peck* v. *Mallams*, 10 N. Y. 509; *Jackson* v. *Parkhurst*, 9 Wend. 209; *Jackson* v. *Willson*, 9 Johns. 92; *Van Winkle* v. *Van Winkle*, 95 App. Div. 605; 184 N. Y. 193.)

*Per Curiam.* The action is for the partition or sale of land. As between the appellant and the other parties it is in fact an action to determine title. One of the points made by the appellant, asserting ownership both by conveyance and adverse possession, is that the conflicting claims over the title cannot be tried in a suit for partition and must be disposed of in an action of ejectment according to immemorial practice supported by many cases which are cited. The practice in this regard is no longer debatable. This court is committed to the view that a person claiming as joint tenant or tenant in common, even though not in actual possession, may now maintain a suit for partition in which all questions of title affecting the entire property may be tried and adjudicated with the same effect as was formerly the practice in actions of ejectment. (Code Civ. Pro. § 1539 *et seq.; Weston* v. *Stoddard*, 137 N. Y. 119; *Satterlee* v. *Kobbe*, 173 id. 91, 95; *Brown* v. *Feek*, 204 id. 238.) The reasons for the change in the practice are so fully stated in these and other cases that we need not now repeat them.

The merits of the case present many difficult questions which have been argued with great ability and thoroughness by counsel and which have been made the subjects of very elaborate discussions by the learned referee before whom the issues were tried and by the Appellate Division in its review. The case is one in which there is no convenient compromise between a long and repetitious review of every detail and a bare outline of the more important questions. We have chosen the latter method. Since we agree with the conclusions reached by the courts below, we deem it unprofitable to repeat the exhaustive

discussions with which we have been favored, and we shall confine ourselves to the shortest possible statement of a few controlling considerations which, under the limited jurisdiction of this court, survive for review on this appeal. For that purpose we refer to some of the salient facts.

The defendant, The Mission of the Immaculate Virgin for the Protection of Homeless and Destitute Children (referred to as the " Mission "), is in possession of a piece of land on Rockaway Beach, the greater part of which it claims to own by conveyance and by adverse possession. The plaintiff and the defendants Alice Corr and the New York City Water Front Company claim as tenants in common under a chain of conveyances and the defendant Packard is a mortgagee. The premises in controversy consist of beach land on Rockaway Beach, Long Island, now of considerable value, but until quite recently regarded as worth very little. By consent of the parties the issues raised by the pleadings were sent to a referee, and the proceedings before him culminated in a report finding that the plaintiff and her co-tenants were the owners of the fee of the premises described in the complaint; that the defendant mission had no title thereto; that the plaintiff was entitled to partition; and that the defendant mission should be removed from possession. This report was confirmed at Special Term by the usual interlocutory judgment adjudging the rights of the parties and appointing commissioners to make partition. The defendant mission appealed to the Appellate Division, where the interlocutory judgment was affirmed. The premises were partitioned and the report of the commissioners was filed, whereupon a final judgment was entered. From this judgment the defendant mission appeals to the court, bringing up for review the interlocutory judgment and all the intermediate proceedings.

For the purposes of this suit the history of the title to the premises in dispute need be traced back no further than 1809. In that year this land was allotted to Thomas

Banister in the right of his wife Rachel under a judgment in what is known as the Cornwell partition suit, designating it as lots four and five of the second division of the beach. At that time Rachel Banister and her sister, Alice Martin, were the joint owners of a farm at Far Rockaway known as "Rock Hall" and of four separate pieces of woodland, comprising in all about four hundred acres, which had been devised to them by their brother Samuel Martin. Rachel Banister died intestate in 1817, leaving her husband, Thomas Banister, and three children, Josiah, Samuel and Alice, wife of William McNeal, and Rachel's interest in lots four and five of the second division of the beach went to these children, subject to the tenancy by the curtesy of Thomas, the husband. In 1817, after the death of Rachel Banister and her sister Alice Martin, the half interest of Alice, in the farm and the detached woodlands, was purchased by Thomas Banister, and in 1818 he and his children executed a deed of the same in trust to James Foster and Robert Bogardus as trustees. This trust deed is one of the pivotal features of the case. The appellant mission contends that the description therein included the beach lots four and five. The respondents, plaintiff and her co-tenants, assert that they were not included, and the courts below have so held. If this deed did not include the beach land the respondents have concededly established title in themselves by a succession of wills, inheritances and conveyances which need not be recited. Upon the premise that the description in this trust deed of 1818 is broad enough to include the beach lots four and five, the appellant mission contends that it acquired title through a subsequent deed made in 1832 by the trustees, Foster and Bogardus, to one Lockwood, and later conveyances to his grantees.

The description in the trust deed of 1818 from Thomas Banister and his children to Foster and Bogardus as trustees, is as follows:

"All that certain farm, mansion house, outhouses,

woodland, meadow, ground and premises, situate, lying and being at Far Rockaway, in the Township of Hempstead, County of Queens and State of New York, commonly called Rock Hall, including the piece of land purchased from Whitehead Cornell, the piece purchased from Stephen Wood, the piece purchased from Micajah Mott and the piece purchased from James Abrams, and whereof Samuel Martin, late of Rockaway aforesaid, physician, died seized. Containing in the whole by estimation four hundred acres of land, all of which the said Samuel Martin devised to his two sisters, Rachel Banister, the wife of the said Thomas, and Alice Martin, deceased, the undivided moiety which belonged to the said Alice Martin was by deed duly executed and bearing date the Twelfth day of September, One thousand eight hundred and seventeen, conveyed to the said Thomas by Robert Bogardus and Alice McNeal, in virtue of will of said Alice Martin, and to which will they were executors."

The description in the deed of 1832 from the trustees to Benjamin C. Lockwood is as follows:

"All that certain piece or parcel of beach, situate, lying and being at Far Rockaway in the County of Queens, between the marsh and the ocean and known and distinguished on the Map of the Beach by lot number six and also that other beach lot adjoining the above lot number seven, which lots lay between the lot of John Cornaga and the lot of William Tisdale, formerly William Cornwell."

In respect of the description in the deed of 1818 to the trustees, the courts below have decided that it did not include the beach land in dispute and we think the conclusion is sustained by the description itself as well as by the extrinsic facts. The description refers to a farm and premises situate at Far Rockaway known as Rock Hall. By specific mention it includes four detached pieces of land and refers to the grantors from which they were acquired. This alone is convincing evidence that the

trust deed was not intended to convey anything but the
farm and the detached lands to which particular reference
was made; and when we turn to the extrinsic facts they
all point in the same direction. The farm itself consisted
of about three hundred acres, and the four detached
parcels added about one hundred acres more, thus answer-
ing the description as to the amount of land. It was
known by the name of Rock Hall, and was located a short
distance east of the former village of Far Rockaway
while the premises in suit were at least three miles west
of the farm and separated therefrom by highways and
other farms. The title to the land in suit was derived
by Rachel Banister in her own right through the Corn-
well partition suit, but the title to the farm and the four
detached pieces was held by Rachel jointly with her sister
Alice Martin until the death of the latter in 1815. There
was no relation of title or location to suggest that they
were all parts of one general description, and the trust ·
deed of 1818 was made at a time when the beach land in
suit was considered of little or no value. In these cir-
cumstances it is highly improbable that either of the
parties to the deed of 1818 would have thought of this
beach land as a part of the trust arrangement. Upon
this branch of the case there are other facts and argu-
ments which we do not deem it necessary to follow at
length. We agree with the courts below in the conclu-
sions: (A) That there is no ambiguity in the description
of the lands conveyed by the trust deed of July, 1818.
(B) That the lands in suit are not embraced in that descrip-
tion. (C) That the extrinsic evidence does not establish
facts from which a contrary inference can be drawn.

The deed of 1832 from the trustees to Lockwood does
not, on its face, purport to convey the beach lots four and
five any more than the deed of 1818 to the trustees. The
lots which the deed of 1832 describes are numbered six
and seven, but in the Cornwell partition suit of 1809 the
Banisters were not awarded lots six and seven in the

second division of the beach; and even if the Banisters acquired these lots there would still be a discrepancy between the description and the *locus in quo* which would exclude the latter from the deed of 1832.   It is clear that in order to identify the land in suit as that which was attempted to be described in this deed it must either be assumed that the use of the lot numbers six and seven was a mistake, or these numbers must be ignored in favor of other parts of the description.   Upon either hypothesis, however, it remains true that if the deed of 1818 to the trustees did not vest in them the title to beach lots four and five, their deed of 1832 to Lockwood could not convey the same no matter what the description may have been.

It is this dilemma that compels the appellant mission to invoke the presumption of a lost grant of the lands in suit from Rachel Banister to her sister Alice Martin, but this theory is hedged about by difficulties which the appellant has not been able to overcome.   Alice Martin died in 1815.   Up to the time of her death she and her sister Rachel were co-tenants of the Rock Hall farm. There was no such co-tenancy in respect of the beach lots, for the interests in these were allotted in severalty, and neither of these sisters had any interest in the beach land of the other.   The record is barren of evidence tending to show that Alice Martin ever made any claim of title to the beach lots in suit or exercised any acts of ownership over them.   And when this branch of the case is closely analyzed it becomes evident that we are asked to apply the doctrine of a lost grant solely upon the conduct of the trustees and their grantees.   We cannot predicate a lost grant merely upon the high reputation of the trustees or their alleged good faith in attempting to make conveyances of lands to which they had no record title.   That would be an easy but dangerous method of legalizing the acts of delinquent trustees at the expense of the record owners of property.   Neither can the presumption of a lost grant be supported by a claim of title

unless it is accompanied by proof of actual or constructive possession characterized by claims and acts of ownership during the period required by law. (*Mission of the Immaculate Virgin* v. *Cronin*, 143 N. Y. 524.) Here the mission has for years claimed title and performed acts upon the land which indicated ownership, but there was no actual or constructive possession which these claims and acts tended to characterize; and, in any event, the period of such possession as was established, falls short of the continuous twenty years which the law requires. In the language of the Appellate Division, "to presume a grant in a case like this would be practically to shorten the statute of limitations." The conclusions reached by the courts below on this point, so fully set forth in their opinions, are in our judgment amply sustained by the evidence and the findings.

We have examined the exceptions to rulings on evidence, to findings and refusals to find, and we have discovered no errors which would justify the reversal of this judgment.

The judgment should be affirmed, with costs.

CULLEN, Ch. J., GRAY, WERNER, HISCOCK, COLLIN, CUDDEBACK and MILLER, JJ., concur.

Judgment affirmed.