BEST RENTING COMPANY, INC., Respondent, *v.* THE CITY OF NEW YORK, Appellant.

**Real property — title — New York city — action to determine adverse claim to real property — defendant can succeed only upon strength of its own title — claim of title by city of New York through grants by State — burden upon it to prove that land in question was conveyed and that State had title thereto — Crown grant to plaintiff's predecessors of land bounded on Jamaica bay — For the purposes of the description coves and inlets are part of bay — State owner of foreshore except where Crown had parted title therewith — hassock separated from land by narrow creek included in grant of meadows, marshes and creeks — no title to land in State which it could convey to defendant.**

1. In an action to compel determination of an adverse claim to real property, brought by a person in possession thereof for a period of one year and claiming it in fee, or for life, or for a term of years not less than ten, defendant can succeed only upon the strength of its own title and not upon the weakness of the plaintiffs' claim.

2. Where upon the trial of such an action against the city of New York, title to the parcel in question, a point or cape projecting into Jamaica bay but now forming part of the upland, is asserted to be in the city by virtue of grants from the State, conveying lands under water and lands constituting islands or hassocks in Jamaica bay, if the grants be read as conveying lands formerly under water or formerly constituting islands or hassocks, the burden rests upon defendant to establish that the point in question, or a part of it, was formerly land under water or a hassock and that the State of New York had title thereto when it made the grants.

3. A contention that a grant from the Crown in 1685 to plaintiff's predecessor in title, which makes Jamaica bay the north boundary line of the property granted, must be construed to mean Jamaica bay proper and not the waters of the bay where they wash the shores of inlets and coves, cannot be sustained. For the purposes of the description in the grant, such waters are a part of Jamaica bay.

4. The State, as the successor of the Crown of England, is the owner of the foreshore or tideway, upon tidal waters within its jurisdiction, except in so far as the Crown had parted title therewith by grants to individuals before the State succeeded the Crown as sovereign.

5. Where, to the extent that the lands now possessed by the plaintiff were then uplands, they were concededly included in the Crown grant, even assuming that a part of the land was, at the time, a hassock separated from the upland by a narrow creek, it does not follow that it was excluded. The description was inclusive of "meadows," "marshes" and "creeks," and, considering the nature of the land, the word "marshes" can only be given force by holding them to be the salt marshes of the shore. They were, therefore, included in the grant and the State of New York had no title to the lands in question which it could convey to the defendant.

*Best Renting Co.* v. *City of New York*, 221 App. Div. 707, affirmed.

(Argued June 12, 1928; decided July 19, 1928.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered November 29, 1927, unanimously affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

*George P. Nicholson, Corporation Counsel (Willoughby B. Dobbs, Robert J. Culhane* and *Rollin H. Reid* of counsel), for appellant. The city has title to its foreshore

or tideway. (*Cortelyou* v. *Van Brunt*, 2 Johns. 357; *Mayor, etc.,* v. *Hart*, 95 N. Y. 443; *Sage* v. *Mayor, etc.,* 154 N. Y. 61; *Jarvis* v. *Lynch*, 157 N. Y. 445; *Langdon* v. *Mayor, etc.,* 93 N. Y. 128; *People* v. *Steeplechase Park Co.,* 218 N. Y. 459.)   In the grants to the various towns on Long Island the title of the riparian owner ended at high water and the land under water and the islands adjacent belonged to the town. (*Tiffany* v. *Town of Oyster Bay*, 209 N. Y. 1; *Town of Oyster Bay* v. *Stehli*, 169 App. Div. 257; 221 N. Y. 515; *Trustees of Easthampton* v. *Kirk*, 68 N. Y. 459; *Trustees of Brookhaven* v. *Strong*, 60 N. Y. 56; *Town of Southampton* v. *Wilcox Bay Oyster Co.,* 116 N. Y. 1; *Town of Brookhaven* v. *Smith*, 188 N. Y. 74; *People ex rel. Squiers* v. *Hand*, 158 App. Div. 515.) The trial justice erred in his findings of fact, conclusions of law and decision, the result of which error was the original judgment appealed from. (*Bardes* v. *Herman*, 114 App. Div. 772.)

*Charles S. Noyes* and *William S. Pettit* for respondent. The plaintiff, having shown a year's possession under claim of title, was entitled to judgment, unless the respondent established a title to the property. (*Davis* v. *Read*, 65 N. Y. 566; *Hill* v. *Mowbray*, 147 App. Div. 507; *Merritt* v. *Smith*, 50 App. Div. 349; *Stackhouse* v. *Stotenburg*, 22 App. Div. 312; *Ford* v. *Belmont*, 69 N. Y. 567; *Shroeder* v. *Gurney*, 10 Hun, 413; *Whitman* v. *City of N. Y.,* 85 App. Div. 468.)   The title to the land in suit passed under the grant by the Crown of England to John Palmer in 1685, and the city, therefore, acquired no title from the State or the Crown. (*Clapp* v. *Byrnes*, 3 App. Div. 284; *French* v. *Carhart*, 1 N. Y. 96; *Coleman* v. *Beach*, 97 N. Y. 545; *Clarke* v. *Devoe*, 124 N. Y. 120; *Blackman* v. *Striker*, 142 N. Y. 555; *Lowndes* v. *Town of Huntington*, 153 U. S. 1; *Tiffany* v. *Town of Oyster Bay*, 209 N. Y. 1; *Grace* v. *Town of North Hempstead*, 166 App. Div. 844; 220 N. Y. 628; *Bliss* v. *Benedict*, 202 App. Div.

115; 234 N. Y. 596; *Starke-Belknap* v. *N. Y. C. R. R. Co.,* 197 App. Div. 249; 234 N. Y. 630.)

KELLOGG, J.   The complaint alleges that the plaintiff is in possession of a certain parcel of land therein particularly described; that the parcel has been in the possession of the plaintiff for more than one year; that the plaintiff is the sole owner of the parcel; that it claims ownership under a deed to it from Rawdown W. Kellogg, dated December 7, 1916, and recorded in the Queens county clerk's office on March 27, 1917; that the defendant unjustly claims an estate or interest therein of the value of not less than $250; that the plaintiff understands that such claim is made by virtue of a grant to the defendant by the State of New York made by chapter 568 of the Laws of 1909; that the claim made by the defendant is unfounded and constitutes a cloud upon the plaintiff's title.   It demands judgment, declaring that the plaintiff has a good title to the premises and that the defendant be debarred from all claim thereto.   The answer denies the allegations in regard to the plaintiff's title and possession as well as the allegations that the defendant's claims to the property are unjust.   It does not deny that the defendant claims title.   It does not affirmatively allege title in the defendant to any part of the parcel described. It does not ask for an affirmative judgment.   It merely demands judgment that the complaint be dismissed.

The land which the complaint describes is a point or cape on the north side of Rockaway point which projects into Jamaica bay in a northerly or northwesterly direction. It is bounded on the south by a laid out street known as Far Rockaway boulevard or Atlantic avenue; on the west by the waters of an inlet known as Norton creek; on the north by the waters of Jamaica bay; on the east, for the northerly third, by the waters of an inlet known as Norton's cove, and for the remaining two-thirds, by a laid out street known as Channel avenue.   The deed

from Rawdown W. Kellogg, dated December 7, 1916, through which the plaintiff lays claim to the premises, as set forth in the complaint, describes the parcel by the known physical boundaries above given. The plaintiff proved, without contradiction, that it was in actual possession of the premises thus described; that it and its predecessors had been in the actual possession thereof for many years.

Where a person has been in possession of real property for a period of one year, claiming it in fee or for life, or for a term of years not less than ten, he may maintain an action against any other person to compel the determination of any adverse claim thereto made by such other person. (Real Property Law [Cons. Laws, ch. 50], sec. 500.) His complaint must set forth a description of the premises; the estate therein claimed by him; a one year's possession thereof; the unjust claim thereto made by the defendant. (Id. sec. 501.) The answer may simply deny the possession of the plaintiff, in which case, if the defendant succeeds, the judgment must be a dismissal of the complaint. (Id. sec. 502.) It may set up facts showing that the defendant has in the premises an estate in fee, or for life, or for a term of years not less than ten. It may demand any judgment to which the defendant would be entitled " in an action brought by him to recover that estate in said property." (Id. sec. 503.) If the defendant, by his answer, claims an estate in the property, the subsequent proceedings are the same " as if it was an action of ejectment." (Id. sec. 504.) If the judgment determines that the defendant is entitled to possession of the property, it must award him possession accordingly. (Id. sec. 506.) " Final judgment for the plaintiff must be to the effect that the defendant, and every person claiming under him * * * be forever barred from all claim * * * in the property." (Id. sec. 507.)

A perusal of these sections might lead to the conclusion that the defendant, not having plead title, was not

privileged to prove or to assert it; that the plaintiff, having established its possession, for more than one year, under a claim of title, was entitled to a judgment forever barring the defendant from asserting a claim thereto. However, if it be assumed that the defendant having proven, without objection, the facts of its title, was entitled to assert it, then it follows that it must succeed, if succeed it does, upon the strength of its own title and not upon the weakness of the plaintiff's claim, precisely as if the defendant were the plaintiff in an ejectment suit.   " If the defendant has a title he is bound to produce and prove it." (*Barnard* v. *Simms*, 42 Barb. 304, at p. 308.)   " The plaintiff, therefore, stood on possession. It was for the defendants to establish their title as in an ejectment suit in which they were plaintiffs." (*Merritt* v. *Smith*, 30 App. Div. 349, at p. 353.)   In *Ford* v. *Belmont* (69 N. Y. 567, at p. 570) it was said of the plaintiff: " She had, nevertheless, been in actual possession for three years, and that was sufficient to entitle her to maintain this proceeding, and compel the  defendants to show their title."

The defendant, upon the trial and upon this appeal, has asserted title to the parcel in question by virtue of two grants to it from the State of New York.   The first grant is contained in chapter 568 of the Laws of 1909. That act grants to the defendant " such right, title and interest as the State of New York may have in and to the land under water in  Jamaica bay and Rockaway inlet and the tributaries thereto."   The second grant is contained in chapter 522 of the Laws of 1912.   That act grants to the defendant " The right, title and interest of the State of New York in and to the islands, hummocks, hassocks, marsh and meadow lands in Jamaica bay and Rockaway inlet and the tributaries thereto." The plaintiff makes no claim to " land under water in Jamaica bay and Rockaway inlet."   Neither does it claim title to any " islands, hummocks, hassocks, marsh and meadow lands in Jamaica bay and Rockaway inlet."

The parcel of land possessed and claimed by the plaintiff, which is the subject of this action, is a point or cape, which is now, and was prior to 1909, the date of the first grant, an upland parcel, rising above the waters of Jamaica bay at high tide. It may be, and in 1909 may have been, " meadow lands " but not meadow lands in " Jamaica bay " or " Rockaway inlet," for never since 1909 has it, or any part thereof, been an island or hassock entirely contained by such waters. If, therefore, we read the two grants, according to their literal terms, as conveying lands presently under water, or lands presently constituting islands or hassocks in Jamaica bay, the claims of the parties in no wise conflict, and the defendant has no vestige of a claim to the parcel in question. If, however, we read the grants as conveying all lands formerly under water, or formerly constituting islands or hassocks, the burden rests upon the defendant to establish (1) that the point in question, or a part of it, was formerly land under water or a hassock, and (2) that the State of New York had title thereto when it made the grants. We will deal with these points in the inverse order of their statement.

It may be conceded that the State, as the successor of the Crown of England, is the owner of the foreshore or tideway, upon tidal waters within its jurisdiction, except in so far as the Crown had parted title therewith by grants to individuals before the State succeeded the Crown as sovereign. Had the Crown parted with the title to the land in suit? In the year 1685 Thomas Dongan, Lieutenant-Governor of the Province of New York, conveyed to John Palmer lands on Rockaway point. Concededly, to the extent that the lands now possessed by the plaintiff were then uplands, they were included in the grant. The description contained in the grant is as follows: " Bounded on the East with Hempstead West Pattent Line on the South with the Maine

32

Sea or Ocean to Low Water Marke and on the West with the Gutt or Inlett which makes the Bay or Sound betwixt Jamaica and the said Tract Parcell or Neck of land and on the Northward with the said Bay or Sound as it Runns East or Easterly untill it Comes unto or meets the Hempstead Line as aforesaid." The description continued as follows: " togather with all and all Manner of Messuages Pastures feedings Meadows Marshes Woods Underwoods Wayes ffences Lakes Ponds Creeks Beach or Beaches Rivers Brooks Springs Hunting Hawking Fishing and Fowling and Appurtenances whatsoever to the said Parcell Tract or Neck of land and Premissess or to any Parte or Parcell thereof in any wise belonging Adjoyning or Appurtaineing."

We have said that the parcel in suit projects into Jamaica bay. More accurately, it projects into Cornaga bay, which indents the shore of Jamaica bay on its southerly side, and includes both Norton's creek and Norton's cove. This inlet is flanked by two headlands which are about two thousand feet apart. The inlet is about one mile deep. A line drawn across the bay from headland to headland would be far to the north of the parcel in suit. The plaintiff contends that the Dongan grant, which makes Jamaica bay the north boundary line of the property granted, must be construed to mean Jamaica bay proper, and not the waters of the bay where they wash the shores of inlets and coves such as Cornaga bay. To sustain this proposition it cites *Lowndes* v. *Huntington* (153 U. S. 1); *Tiffany* v. *Town of Oyster Bay* (209 N. Y. 1); *Grace* v. *Town of North Hempstead* (166 App. Div. 844; affd., 220 N. Y. 628). These cases involved the title to land under water in Huntington bay, Oyster bay and Manhasset bay, which indent the shores of Long Island sound. The patents which granted the lands bounded them by Long Island sound. It was held that the bays were no part of the sound and that in each instance the line bounding

the grant was a line to be drawn from headland to headland. The decisions establish a rule of construction peculiar to grants of land upon Long Island sound or other bodies of water similarly situated. Thus in *Tiffany* v. *Town of Oyster Bay* (*supra*) the court said: " In the ancient colonial charters granting land on Long Island in which the Sound is named as the boundary on the north, the term refers directly to the body of water known by such name and does not include waters opening into it or connected with it." In *Lowndes* v. *Huntington* (*supra*) it was said: " The northern boundaries in all these charters is given as ' the Sound.' That was then, and is now, a well known body of water. It opens into the Atlantic Ocean, but is separate and distinct therefrom. Into it flow many rivers, and open many bays, harbors, and inlets; but the fact of the connection between them and it does not make them a part of the Sound." Jamaica bay bears no resemblance to Long Island sound. It is not, like the sound, a large body of water, traversed by ocean going vessels, and known to all mariners as a navigable arm of the ocean, a minor sea. It is a shallow bay almost land locked, not more than seven miles across at its widest part, filled with islands and hassocks, themselves indented with many coves and bays, as are the shores of the bay itself. Its surface contracts and expands with the alternating tides, a great surface acreage becoming land with the ebb, and water with the flow. It is navigable only in narrow channels and large vessels never traverse it. " Jamaica bay " calls to mind hassocks, flats, coves and long stretches of sand. " Long Island Sound " calls to mind a semi-sea. If we eliminate from the meaning of the former all the inlets, creeks and coves indenting its shores, its islands and its hassocks, we would exclude its most characteristic features. We think that Cornaga bay, for the purposes of the description in the Dongan grant, was a part of Jamaica bay.

The plaintiff also contends that the Dongan grant to Palmer, since it included all " creeks, beach or beaches," carried title to low-water mark on the south shore of Jamaica bay. A map, introduced from the files of the United States Coast and Geodetic Survey, shows that, in the year 1841, the line of shore, in the vicinity of the premises in question, at low tide, was about one-third of a mile to the north of such premises. Therefore, the plaintiff reasons that the premises were included in the grant. In *Rockaway Park Imp. Co.* v. *City of New York* (140 App. Div. 160) it was definitely held that the Dongan-Palmer grant carried title to low-water mark. The case never came to this court. The same ruling was made in *Rockaway Pacific Corporation* v. *State* (122 Misc. Rep. 503) by the Court of Claims. The decision was affirmed in this court in 243 New York, 556. However, the plaintiff in that case relied upon a grant made to its predecessor in title by the sovereign State of New York in the year 1897. The affirmance of the decision may be attributable to the terms of that grant irrespective of the terms of the Dongan grant. It cannot be said, therefore, that this court held that the Dongan grant carried title to low water. No doubt the plaintiff's contention finds support in language of Judge ALLEN who wrote for this court in *Trustees of East Hampton* v. *Kirk* (68 N. Y. 459 at p. 462). Judge ALLEN there said: " Ordinarily in a grant of lands under the name of a ' beach ' or a boundary of lands upon or by, or along ' a beach,' the word would be held synonymous with the shore or strand, and as having reference to and including only the lands washed by the sea, and between high-water-mark and low-water-mark." But Judge ALLEN also said: " In a grant of a ' beach,' and perhaps, when a ' beach ' is made the boundary of lands, other clauses of the deed, and the situation of the lands granted or other circumstances may authorize a different interpretation and effect may be given to the word as meaning flats, or the sandy land

between the upland and the actual shore line." While there is much force in the plaintiff's contention, we prefer not to decide the question raised and will place our judgment upon other grounds.

Proof was given and a finding made that in the year 1878 and prior thereto the northerly end of the point in question was a hassock separated from the upland of the point by a narrow creek, dry in low tide, but navigable in high tide by rowboats. The creek was so narrow at high tide that a man might jump across it. That the creek existed in 1685, the year of the Dongan grant, was not proven or found. It does not appear on the 1841 government map to which we have referred. It does not appear upon a still earlier government map of the year 1835, upon which the shore line of Jamaica bay is plotted. However, even if we assume that the north part of the point, at the time of the Dongan grant was a hassock, it does not follow that it was excluded from the grant.

The Dongan grant is inclusive of " Marshes " and " Creeks." " Low land subject to overflow by tides is called salt marsh or tide marsh." (Century Dictionary.) It would have been wholly unnecessary to specify " Marshes " if thereby bogs or swamps, situate upon the uplands of Rockaway point, had been intended, for they would have been included in the other words of description used. Indeed, it is scarcely conceivable that swamps have ever been present upon that long and narrow sandy neck of land. Yet the word has meaning and must be given force. We think that it can only be given force by holding that the " marshes " of the Dongan grant were the salt marshes of the shore and that they were included in the grant.

The point in controversy appears upon the government map of 1835. The map bears signs indicating that the point from its base to its outer extremity was marsh land. An expert in the service of the Geodetic and Coast Survey testified that the solid unbroken line upon the

map, apparently marking the shore lines of the point and adjoining lands, was in fact a line indicating the extreme limit of the marshes along the shore. Another witness testified that this line, as indicated upon the map, extends into Jamaica bay some seven hundred feet farther than does the actual shore of the point in question as it now appears. Even in the finding made by the trial court that the extreme north end of the point, prior to 1878, constituted a hassock, it is found that the hassock was " partly marsh and partly meadow land." The lands, which, in 1835, may have been covered at high tide by a narrow creek, are shown upon the map of that year as marsh lands. We conclude that all the lands now claimed and possessed by the plaintiff were included in the Dongan grant either as " Meadows " or " Marshes." Therefore, the State of New York had no title to the lands in question, which it might convey to the defendant, and the defendant is without title or right thereto.

The judgment should be affirmed, with costs.

CARDOZO, Ch. J., POUND, CRANE, ANDREWS, LEHMAN and O'BRIEN, JJ., concur.

Judgment affirmed.