MARBA SEA BAY CORPORATION, Appellant, *v.* CLINTON STREET REALTY CORPORATION et al., Defendants, and THE CITY OF NEW YORK, Respondents.

ARVERNE-BY-THE-SEA COMPANY, Appellant, *v.* HELEN M. AMERMAN et al., Defendants, and THE CITY OF NEW YORK, Respondent.

BOARDWALK DEVELOPMENT CO., INC., Appellant, *v.* JULY DEVELOPMENT CO., INC., et al., Defendants, and THE CITY OF NEW YORK, Respondent.

(Argued November 19, 1936; decided December 31, 1936.)

*Max J. Rubin, Charles S. Noyes, Eph A. Karelsen, Seymour Graubard, Frank E. Karelsen, Jr., Frederick Baum* and *Malcolm R. Lawrence, Jr.,* for appellants.

*A. Joseph Geist, Leo B. Mittelman* and *Isaac Katz* for Chamber of Commerce of the Rockaways, *amicus curiæ.*

*Paul Windels,* Corporation Counsel (*Paxton Blair,* *George S. Parsons* and *Rollin H. Reid* of counsel), for respondent.

CRANE, Ch. J.  The grant of eleven miles of foreshore, being the entire ocean front of the borough of Queens, which grant is to a private person for neither commercial nor governmental purposes, is one not recognized by the law.  Neither the King nor the State could grant away for private purposes so much of the public's rights in the lands under water.  The matter was discussed in *Coxe* v. *State* (144 N. Y. 396, 406), where it was said: " When the general doctrines of the English courts on this subject are given full scope, the conclusion is inevitable that the Parliament and the Crown together were not competent to grant to a private corporation, for private purposes, the seacoast around the island below the shore line, without violating established principles of law.  (*Martin* v. *Waddell*, 16 Peters, 367.)  While I am not aware of any such restriction to be found in the Constitution of this State, in terms, yet, from the very nature of the question, it must be deemed to be inherent in the title and power of disposition.  The title which the State holds and the power of disposition is an incident and part of its sovereignty that cannot be surrendered, alienated or delegated, except for some public purpose, or some reasonable use which can fairly be said to be for the public benefit." See the same point in *People* v. *New York & Staten Island Ferry Co.* (68 N. Y. 71); *Illinois Central R. R. Co.* v. *Illinois* (146 U. S. 387); also *People* v. *Steeplechase Park Co.* (218 N. Y. 459, 482). Grants to towns or other bodies endowed with local sovereignty form an exception to the rule.  (*Martin* v. *Waddell*, 16 Pet. [U. S.] 367.)  The grant, therefore, or patent given by Lieutenant-Governor Dongan to John Palmer in 1685, attempting to convey all this shore front or foreshore to low-water mark to the said John Palmer was contrary to the public policy and the law and, therefore, void.

That it was so considered and treated by the owners and lawyers and conveyancers in the past century is clearly indicated by the partition suit brought by John Cornwell against William Cornwell in 1809 involving these premises. The petition in the partition suit described the land as " bounded southerly by the Atlantic Ocean." The Commissioners appointed by the Court of Common Pleas described the southerly boundary as " bounded southerly by the Atlantic Ocean." The description of the lot here in question as made in the report of the Commissioners in this partition suit is as follows: "And we do allot to Nathaniel Ryder, who holds under John Mott, by and with the consent of John Mott, as appears by writing under his, the said John Mott's hand for that purpose executed, all that certain lot in the first division of the beach, known and distinguished by lot number ten, bounded on the north by the marsh; on the east by lot number eleven; *on the south by the ocean,* and on the west by lot number nine, being sixteen rods wide as the said lot is staked out."

Bounding property by the ocean, or as here, " bounded southerly by the Atlantic Ocean," carries title no further than high-water mark, and excludes the foreshore. ( *Tiffany* v. *Town of Oyster Bay*, 209 N. Y. 1.) There can be no doubt that under these partition suits the plaintiffs and their predecessors received no title to the foreshore. The property partitioned was limited by the high-water mark and all the proceedings and conveyances thereafter, down to and including the plaintiffs', carried title no further.

The first deed given after the partition decree, plaintiff's Exhibit 18, described their property as " bounded southerly by the Atlantic Ocean." For a period of one hundred and one years, 1828 to 1929, this property has been " bounded by the Atlantic Ocean " high-water mark, in all descriptions. The lawyers and conveyancers for the past century have not all been wrong in considering the grant of 1685 as incapable under the law then and

now of conveying the foreshore to private individuals for private purposes. The fact that the owners and their attorneys, as well as the courts, have considered for more than a century that the title to these lands did not extend below high-water mark should lead this court to affirm these conclusions. (*Mulry* v. *Norton*, 100 N. Y. 424.)

For these reasons I favor the affirmance of the judgments below.

In each action the judgment should be affirmed, with costs.

O'BRIEN, J. (dissenting). This action is in partition and was instituted to determine title to premises formerly lying between high- and low-water mark at Rockaway beach, but now filled in by the city of New York, and to adjudge that neither the city of New York nor the State has any interest in these premises, but that plaintiff and Clinton Street Realty Corporation are seized in fee. The premises are described as bounded on the north by the high-water line of the Atlantic ocean as it existed in 1925, and on the south by the north line of the public beach or boardwalk. The complaint alleges that plaintiff's title is derived from the grant made in 1685 by Governor Dongan to John Palmer and from an earlier Indian deed to Palmer executed during the same year.

The premises within the Palmer grant are described as: "All that tract or parcel of land and meadow, situate, lying and being on the south side of Long Island in Queens County called by the name of Rockaway * * * *bounded* on the east with Hemstead West Patent Line, *on the south with the Maine Sea or Ocean to low water mark* * * * together with all and all manner of messuages, pastures feedings meadows marshes * * * *beach or beaches* * * *.*" The Indian deed conveyed the same premises to Palmer and describes them as a " Parcell of Land and Meadow," also bounds them " on the south with the Maine Sea or Ocean to Low Water Marke" and includes all " Meadows, Marshes, * * * *Beach or Beaches.*"

The Palmer grant bears every indication of an intent to convey lands submerged by the tide. The description of the boundary to low-water mark in this grant manifests a departure from the usual rule that, in the absence of an expressed intention to the contrary, a grant by the sovereign of land on tide water extends only to high-water mark. (*Matter of Mayor, etc., of New York*, 182 N. Y. 361, 365; *Tiffany* v. *Town of Oyster Bay*, 209 N. Y. 1, 9; *Rockaway Park Imp. Co.* v. *City of New York*, 140 App. Div. 160, 169.) In *Matter of City of New York* (*Feltman*) (256 N. Y. 156) we applied the usual rule. The Colonial grants to the town of Gravesend under consideration in that case, the Kieft patent of 1645, the Nicolls patent of 1668, the Lovelace patent of 1670 and the Dongan patent of 1686, were bounded by the Maine ocean without mention of low-water mark and did not vest title in the town to the land between high and low water. In the Dongan grant to Palmer, which constitutes the source of title to the lands now in litigation, not only in express terms does the boundary run to low-water mark but among the lands included in the grant are the beaches and marshes.

Concluding as we do that the intention of the Dongan grant to Palmer was to convey to low-water mark, the question arises whether such an extensive grant to an individual of the foreshore, including several miles, was valid. At the time of this grant the ownership of the soil was regarded as *jus privatum*, was vested in the Crown and could be alienated by the Crown or its representative subject to the *jus publicum* which resided within the control of Parliament. (*People* v. *New York & Staten Island Ferry Co.*, 68 N. Y. 71, 77, 78; *Langdon* v. *Mayor*, 93 N. Y. 129, 155; *People* v. *Steeplechase Park Co.*, 218 N. Y. 459, 473.) A grant in modern times by which the State, as successor to the Crown and Parliament, attempted to divest itself of all jurisdiction over vast areas of the foreshore in the counties of Kings, Queens, Rich-

mond and Suffolk in favor of a private corporation for speculative purposes, of course, is invalid. (*Coxe* v. *State,* 144 N. Y. 396.) So too, is legislation abdicating control by the State of miles of waterfront in the harbor of Chicago and vesting control in a railroad corporation. (*Illinois Central R. R. Co.* v. *Illinois,* 146 U. S. 387.) But the Dongan grant to Palmer, as interpreted by us, conveyed no more than title to the soil subject to the rights of the public. That the Palmer grant which included a large tract between the ocean and Jamaica bay was not so extensive as to be invalid has been decided in *Rockaway Park Imp. Co.* v. *City of New York* (140 App. Div. 160); *Rockaway Pacific Corp.* v. *State* (122 Misc. Rep. 503); *Kellum* v. *Corr* (149 App. Div. 200; affd., 209 N. Y. 486) and *Best Renting Co.* v. *City of New York* (248 N. Y. 491, 502).

In Palmer's deed to Richard Cornwell, November 20, 1685, seventeen days after the issue of the Dongan patent, the premises are described as bounded on the south with the "Maine Sea or Ocean *to low water marke*." The will of Richard Cornell, dated 1693, devised to his son William a certain part of his lands and meadows, including beaches, at Rockaway bounded southerly "by the sea including all * * * marshes beaches * * *." William Cornell's will, dated 1742, devised to his sons John and William " all my Beach Marshes and broken Lands * * *." By the will of William Cornell, Jr., dated 1756, all his lands, meadows, tenements and hereditaments in any part of the world are directed to be sold. By deed dated 1767 John Cornell conveyed to Josiah Martin " a certain tract or parcel of land or *beach* lying and joyning to the old inlet called Far Rockaway." By deed dated June 15, 1807, Ruth Cornwell and Fannie Cornwell conveyed to William Cornwell a certain tract of land at Rockaway beach " described and set forth in a certain patent now in possession of the said William Cornwell as by reference thereunto will more fully appear together with all and singular the marshes, meadows * * *."

The petition of John Cornwell in the partition action upon which the Commissioners made their report in 1809 described the lands sought to be partitioned as " that certain tract of *beach, salt marsh, salt meadows and beach or hills covered with cedars,* with the hereditaments and appurtenances thereunto belonging, situate, lying and being at a place called Far Rockaway, in the town of Hempstead, County of Queens and State of New York; *bounded southerly by the Atlantic Ocean."* Although the beach is included within the lands to be partitioned there is no reference in the petition to low-water mark.

The report of the Commissioners made partition of a " certain tract of beach, salt marsh, salt meadow and beach " and allotted to Nathaniel Ryder " all that certain lot in the first division of the *beach* known and distinguished by lot number ten, bounded on the north by the marsh; on the east by lot number eleven; *on the south by the ocean* * * *."* Although the beach is included there is no specific reference to low-water mark.

The finding both by the Special Term and the Appellate Division is that the premises in question lie within the lines of beach lots 10 and 11 as described in the report of the Commissioners in the partition suit of *Cornwell* v. *Cornwell* and that the Commissioners in that suit awarded lot 10 to Nathaniel Ryder. Both the Special Term and the Appellate Division found that it does not appear from the evidence that Nathaniel Ryder ever conveyed lot 10 to any one in the chain of title through which the plaintiff and the defendant Clinton Street Realty Corporation claim ownership of these premises. The Special Term refused but the Appellate Division did find that the part of lot 10 claimed to be owned by plaintiff and the Clinton Street Realty Corporation included no land lying south of the high-water mark of the Atlantic ocean.

After the termination of the partition action in *Cornwell* v. *Cornwell*, many deeds were recorded. A deed dated 1828 between Nostrand and Ryder and Wanser

described lots Nos. 9 and 10 as two lots of *beach* land bounded southerly " by the Atlantic Ocean," and there are other deeds in 1841, 1850, 1853 and 1870. Lots No. 11 and No. 12 were conveyed to Brandreth by deed in 1882, described those premises as running a due south course " to the *Atlantic Ocean;* thence running westerly and bounded southerly by the *Seashore* thirty three rods and thirteen links thence running a due north course by lot No. Ten to a stake in the meadow." Deeds by Brandreth to Chase in September and October, 1887, described the premises conveyed as extending to the Atlantic ocean. A deed from Larkin to Sheahan in 1902 conveyed " to the Atlantic Ocean thence running easterly along the Atlantic Ocean " and the deed from Sheahan to Westphal in 1921 conveyed southerly two hundred feet to the Atlantic ocean.

The deed from Rich-El-Hara Corporation to this plaintiff Marba Sea Bay Corporation, recorded May 9, 1929, conveyed the premises described in the 1921 deed from Sheahan to Westphal.

Neither in the petition in the action of *Cornwell* v. *Cornwell* nor in the report of the Commissioners nor in any of the deeds executed subsequent to that action is any reference made to *low-water mark.* The only deed describing the boundary as extending to low-water mark is the deed of 1685 from Palmer to Richard Cornwell. However, the various instruments by which the successors of Palmer alienated their interests in the lands included within the Dongan patent of 1685 convey beaches, marshes and meadows. The word " beach " includes land between high- and low-water mark. When used to describe a boundary it signifies high-water mark but when it is included within land conveyed, the premises, considered in relation to all the circumstances, may be deemed to extend to low-water mark. (*Trustees of Town of East Hampton* v. *Kirk*, 68 N. Y. 459, 463; *McRoberts* v. *Bergman*, 132 N. Y. 73, 83; *Best Renting Co.* v. *City of New York*, 248 N. Y. 491, 500, 501.) The beach and

beaches are expressly granted and such a conveyance usually carries to low water. (*Rockaway Park Imp. Co. v. City of New York*, 140 App. Div. 160, 170.) The same is true in respect to marshes. (*Best Renting Co. v. City of New York, supra.*) Plaintiff's predecessors as upland proprietors conveyed such interest as vested in them in respect to the foreshore even though they failed expressly to use the words " to low water mark." (*Archibald v. N. Y. C. & H. R. R. R. Co.*, 157 N. Y. 574, 579.) They will be presumed to have intended to convey all that they owned. (*Matter of Mayor of New York*, 182 N. Y. 361, 364, 365; *Matter of City of New York* [*W. 10th St. Realty Corp.*], 256 N. Y. 222, 226, 227.)

Under binding precedents, I am of the opinion that Palmer obtained title to low-water mark subject to the *jus publicum*, that the lands partitioned in the Cornwell suit in 1809 included the beaches to low-water mark and that plaintiff by conveyances subsequent to the report of the Commissioners in that suit obtained title, subject to the rights of the public. Plaintiff being owner of the upland and possessing an interest in the foreshore subject to the *jus publicum*, when the foreshore was filled in by the city, there remained no land under water, and the city, as successor to the State (Laws of 1926, ch. 542), being vested with the *jus publicum*, extinguished the public right in land which had formerly been under water. Moreover, the Dongan patent of 1685 is not void on its face and cannot be collaterally assailed. (*Blakslee Mfg. Co. v. Blakslee's Sons Iron Works*, 129 N. Y. 155, 160; *N. Y. C. & H. R. R. R. Co. v. Aldridge*, 135 N. Y. 83, 92; *People v. Steeplechase Park Co.*, 218 N. Y. 459, 470.)

The judgment of the Appellate Division should be reversed and that of the Special Term affirmed, with costs.

HUBBS, CROUCH, LOUGHRAN and FINCH, JJ., concur with CRANE, Ch. J.; O'BRIEN, J., dissents in opinion in which LEHMAN, J., concurs.

Judgment affirmed.